[Civ. No. 10384.   First Appellate District, Division One.—February 27, 1939.]

JOSEPHINE H. JOHNSON, Appellant, v. UNION FURNI-
TURE COMPANY (a Corporation), Respondent.

Edward D. Mabson for Appellant.

Bronson, Bronson & McKinnon for Respondent.

KNIGHT, J.—Defendant's demurrer to the seventh amended complaint was sustained without leave to amend, and from the judgment entered pursuant to the order made in that behalf, plaintiff appeals.

The action was for the recovery of damages, and was brought by the surviving wife of John Johnson, deceased, under the authority of section 377 of the Code of Civil Procedure, which provides in part that ''When the death of a person not being a minor . . . is caused by the wrongful act or neglect of another, his heirs . . . may maintain an action for damages against the person causing the death. . . . ''

The substance of the cause of action attempted to be pleaded was that because of respondent's failure to return to appellant's residence before nightfall, as promised, a bed which respondent had wrongfully removed therefrom some three and a half months before, appellant's husband, who had been in ill health for eleven years, was compelled to retire for the night on a mattress spread on the floor, and that on account of the cold, and drafts to which he was exposed during the night he contracted pneumonia and died two days later.

One of the points urged by respondent in support of the trial court's ruling sustaining the demurrer is that the statutory right granted by said section 377 to the heirs of a deceased person to sue for damages on account of the latter's death is restricted to cases where death is caused by some tortious act, either of commission or omission; that since no such right to sue existed at common law, the terms of said section cannot be extended judicially to include also actions for death growing out of the breach of contract (citing *Willey*

v. *Alaska Packers Assn.* (Dist. Ct., N. D. Cal., S. D. 1925), 9 Fed. (2d) 937; *S. H. Kress & Co.* v. *Lindsey*, 262 Fed. 331 [13 A. L. R. 1170]; *Bloss* v. *Dr. C. R. Woodson Sanitarium Co.*, 319 Mo. 1061 [5 S. W. (2d) 367]; *Lewis' Admr.* v. *Taylor Coal Co.*, 112 Ky. 845 [66 S. W. 1044, 57 L. R. A. 447]; *Dice's Admr.* v. *Zweigart's Admr.*, 161 Ky. 646 [171 S. W. 195, L. R. A. 1916F, 1155]; *Burkhardt* v. *Armour & Co.*, 115 Conn. 249 [161 Atl. 385, 90 A. L. R. 1260]); and that the present action falls within the latter class, the basis thereof being, according to the allegations of the complaint, the failure of respondent to carry out its promise to return the bed before nightfall. The other point made by respondent is that in any event the facts pleaded in the complaint do not show that the failure to return the bed as promised was the proximate cause of the death of appellant's husband. We are of the opinion that the latter point is well taken; consequently it will be unnecessary to make further inquiry into the merits of respondent's contention as to the construction of said section 377.

The circumstances leading up to the failure to return said bed, as they were alleged in the complaint, were these: On January 12, 1934, appellant and her husband returned to their residence in San Francisco after an absence of several months, and found that respondent, on September 23, 1933, had removed therefrom certain personal property, including a bed, belonging to appellant; and about 11 o'clock on the morning of the same day appellant's husband notified respondent of the wrongful taking of said property, and demanded its immediate return. In response to such demand respondent promised to "look up" said property and take it back before 4 o'clock in the afternoon; but after waiting until 3:30 o'clock in the afternoon for its return, appellant herself went to respondent's store, notified respondent again of the wrongful taking of said property, and repeated the demand for its immediate return. The complaint then goes on to allege that at that time appellant informed respondent that her husband was sick; that he had "been ill and in very poor health for eleven years and was greatly in need of said bed"; that it was the only bed they had, and that "owing to her husband's poor state of health and physical condition, it was absolutely necessary and imperative that he should have a bed to rest and sleep upon . . . "; that thereupon respond-

ent assured appellant that the bed would be returned before 6 o'clock that evening. Continuing, it was alleged that at 8 o'clock in the evening, appellant and her husband "gave up all hope of said defendant complying with its . . . said promises to return said bed as aforesaid"; that at that time it was raining, and the weather was "cold and bitter"; and believing it would be dangerous for her husband to venture outside "to search for a place to sleep", appellant spread a mattress on the floor upon which they retired for the night; and that due to exposure to the cold and drafts during the night her husband contracted pneumonia with the fatal result already stated.

It is well settled that in order to maintain an action for damages based on the wrongful act or neglect of another, a plaintiff must allege and prove that the wrongful act of the defendant was a direct and proximate cause of the injury. (*Marsiglia* v. *Dozier*, 161 Cal. 403 [119 Pac. 505].) In other words, "To impose liability it is not enough to show that an injury would not have occurred in the absence of the negligent act, but it must be shown that the act was the efficient cause of the injury—the act from which the injury followed in continuous sequence unbroken by any efficient intervening cause. Thus even though one has been guilty of negligence, he may still not be liable . . . if such negligence is remote in the chain of causation and did not contribute proximately to the injury" (19 Cal. Jur., p. 561). And in this connection it is held generally that the word "proximate" is intended to mean direct or immediate, as opposed to remote (*Straten* v. *Spencer*, 52 Cal. App. 98 [197 Pac. 540]) ; and that negligence requiring the interposition of new and independent agencies to cause injury is remote (*Oakland Bank of Savings* v. *Murfey*, 68 Cal. 455 [9 Pac. 843]). Moreover, in determining the question of proximate cause, care must be taken to avoid confusing two elements which are separate and distinct, namely, that which causes the injury, and that without which the injury would not have happened. For the former the defendant may be liable, but for the latter he may not; that is to say, in order to make a defendant liable his wrongful act must be the *causa causans*, and not merely the *causa sine qua non* (*Klarquist* v. *Chamberlain & Proctor*, 124 Cal. App. 398 [12 Pac. (2d) 664]). In Sedgwick on Damages, ninth edition, volume 1, page 200, the rule is stated thus: "Two

entirely independent conditions must be satisfied. First, to be proximate and entail legal responsibility, a cause must be one but for which the result would not have happened. Second, not only must this test be satisfied, but also this cause must be active enough in the result for it to be regarded in the law as efficient in responsibility." ▆ It is also well settled that in cases such as this it must appear not only that the injury complained of was the natural and probable consequence of the wrongful act, but also that such consequence might reasonably have been foreseen by a person of ordinary intelligence in the light of attending circumstances, unless the act is one of wanton wrong (*Bush* v. *Weed Lumber Co.,* 63 Cal. App. 426 [218 Pac. 618] ; *Newman* v. *Steuernagel,* 132 Cal. App. 417 [22 Pac. (2d) 780]). As said in the former case, " 'One is bound to anticipate and provide against what usually happens and what is likely to happen, but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what is only remotely and slightly probable. A high degree of caution might and perhaps would guard against injurious consequences which are merely possible; but it is not negligence in a legal sense to omit to do so'; and in the case of *Mayne* v. *Chicago etc. Ry. Co.,* 12 Okl. 10 [69 Pac. 933], we find language of similar import: 'What is usual, the law requires a person doing a wrong to anticipate and provide against, but the law does not require that even a wrongdoer shall anticipate and provide against the unusual.' " The same doctrine is summarized in California Jurisprudence (vol. 19, p. 562) as follows: "In order to warrant a finding that negligence or an act not amounting to wanton wrong is the proximate cause of an injury, it must not only appear that the injury is the natural and probable consequence of the negligent or wrongful act but that it ought to have been foreseen in the light of attendant circumstances. And if the wrong and the resulting damages are not known by common experience to be usually and naturally in sequence, and the damage does not in the ordinary course of events follow from the wrong, then the wrong and the damage are not sufficiently conjoined to support an action." ▆ Furthermore, if, subsequent to the initial cause, a new efficient cause intervenes to affect the injury, having its origin independent of the initial cause, or having its origin therein could not reason-

ably have been foreseen by a person of ordinary intelligence and prudence as a natural and probable result thereof, it supersedes the initial cause, breaks the connection between the initial cause and the effect, and becomes a proximate cause of the injury rendering the initial cause remote. (19 Cal. Jur., p. 567.)

In the present case no facts were pleaded from which it would appear that respondent could reasonably have foreseen that its failure to deliver the bed before nightfall would result in compelling appellant's husband to sleep on the floor, or that such would be the natural or probable consequence of said non-delivery. True, it was alleged that appellant told respondent that the bed was the only one they had; but it would not necessarily follow therefrom that they would not be able to obtain suitable sleeping quarters elsewhere, in case the bed was not returned that night. Nor were any circumstances pleaded to show they could not have done so, except that at 8 o'clock that night it was raining and cold, and therefore dangerous for appellant's husband to go outside. But obviously it cannot be successfully maintained that respondent should or could also have foreseen that such would be the condition of the weather. And even assuming that respondent might reasonably have anticipated that if the bed were not delivered as promised the decedent would have to sleep on the floor, it cannot be fairly said that respondent should have foreseen that the room in which he would sleep would be cold and drafty, and that as the probable result of sleeping on the floor he would contract acute pneumonia. In other words, the facts of the case show that it was the unusual that happened; and as pointed out by the authorities hereinabove cited, in cases such as this the law holds a wrongdoer responsible in damages only for the natural and probable results of his wrongful acts, and for the injurious effects thereof which he might have reasonably foreseen.

Furthermore, as respondent points out, it was not alleged directly, nor were any facts pleaded which show that the alleged wrongful act or neglect in failing to deliver the bed was a direct, proximate or efficient cause of the death of appellant's husband. Quite to the contrary, as appears from the affirmative allegations of the complaint themselves, his death was proximately caused by a disease which he contracted by sleeping in cold, drafty quarters, and a weakened physical condition resulting from eleven years' sickness. Those allega-

tions were as follows: " . . . in this behalf plaintiff alleges and shows that while so lying and sleeping on said mattress on the floor as aforesaid, her said husband was exposed to much cold and drafts *and because thereof,* in his said ill and poor state of health his physical powers of resistance were weakened and broken down, and because thereof, *and not otherwise,* he contracted pneumonia and died as aforesaid . . . " (Italics ours.) The complaint did allege that if respondent had returned the bed as promised, appellant's husband would not have been obliged to sleep on the floor and thereby expose himself to cold and drafts; but as will be noted from the authorities above cited, in order to hold a defendant liable in damages, his wrongful act or neglect must be a direct cause of the injury, and not merely the cause but for which the injury would not have happened.

It is our conclusion, therefore, that upon the grounds and for the reasons stated the trial court was justified in holding that the seventh amended complaint failed to state a cause of action. Accordingly the judgment is affirmed.

Tyler, P. J., concurred.