Sidney Black, Appellant, v. Downtown Parking Stations, Inc., Appellee.

Gen. No. 44,109.

Opinion filed November 3, 1947. Released for publication November 18, 1947.

THOMAS J. CAVANAGH, of Chicago, for appellant; MAURICE C. McCARTHY, of Chicago, of counsel.

WM. J. TERRELL, of Chicago, for appellee; CHARLES D. SNEWIND, of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against defendant to recover what he had paid to repair his automobile (which he had left in defendant's garage) on account of the claimed negligence of defendant. There was a trial before the court without a jury and a finding and judgment in defendant's favor. Plaintiff appeals.

The record discloses that plaintiff owned a 1942 Buick sedan and shortly after 8 o'clock on the morning of June 3, 1946, drove from his home, 1205 Sherwin avenue, Chicago, to defendant's garage at 225 N. Dearborn street, a distance of about 11 miles, and left his car on the main floor of the defendant's garage for storage. He returned about 12 o'clock, noon, on the same day, called for his car, and shortly thereafter, was told that the car had been damaged while one of defendant's employees was bringing it down from the second floor. Thereupon plaintiff, with Lester Barnum, the manager of the garage, went up to see and examine the automobile which they found on the mezzanine floor. It was being brought down by Albert H. Zaremba, defendant's employee, who had been doing that work for defendant for about 3 years. The evidence further shows that as Zaremba was driving the car down the ramp, when it reached about the mezzanine floor, in place of following the ramp down to the first floor, the car ran into 2 cars which were parked on the mezzanine floor and did considerable damage to the front part of plaintiff's automobile. Shortly after the accident the automobile was towed to a repair shop located on Irving Park Road, where it received temporary repair and later was repaired at an expense to plaintiff of $188.91.

Plaintiff, having made out a *prima facie* case (by showing that he left the car in defendant's garage in a good condition and it was returned to him in a damaged condition) defendant called Zaremba, who testified that at the time of the trial, January 29, 1947, he was working for a bowling alley concern; that on

June 3, 1946, he was employed at defendant's garage and on the day in question, drove plaintiff's car down from the second floor; that he had been driving automobiles for 20 years and had been working in parking lots and garages for 6 years "hiking automobiles up and down the ramps." That he was acquainted with the mechanical makeup of the 1942 Buick car; that it was parked on the second floor of the garage against the wall and he had to move a car, which was parked in front of it, and then got into plaintiff's car and started down the ramp. When he had reached about the mezzanine floor "I put my foot on the brake to slow up in case anybody was coming up and there was no brakes. My foot went clear down to the floor board." That he was then about 15 feet from the nearest automobile which was parked on the mezzanine floor. That "There is an emergency foot brake on the left hand side just alongside the clutch pedal. I couldn't reach it at all and tried to put the car in reverse but the gears meshed a little bit and I didn't get it in reverse at all. The Buick glided against two cars." Shortly thereafter Mr. Barnum and plaintiff came up to the damaged car and the 3 examined it and had a talk. The hood of the car was lifted up and there was a fire in the front of the motor. The fire was put out. That when he started to bring plaintiff's car down from the second floor he traveled about 36 feet on that floor before reaching the ramp. That when he started down he was in first speed and then shifted into second speed before he reached the top of the ramp. He then described what he did, and the collision with the other 2 automobiles, as above stated.

Lester Barnum, called by defendant, testified that on June 3 he was the manager of the garage and had been for several years. That Mr. Black, the plaintiff, had been a steady customer of the garage for two or three years. That on the day in question when he first saw plaintiff's car it was on the mezzanine floor

"jammed up against a 1938 Oldsmobile and a 1939 LaSalle." That Zaremba was driving the car downstairs; that the witness was familiar with the mechanical operation of a Buick car; that the emergency brake on the car is located on the left side of the clutch; "It is a foot brake." That right after the accident he examined the car, having been called by Zaremba, and walked up the ramp with plaintiff: that he smelled something burning, picked up the hood of the car and found a small flame; that fluid was coming out; that after the accident he examined the ramp and found "brake fluid was on the ramp about 15 or 18 feet behind where the accident happened." That he told plaintiff the car was in the accident because it had no brakes and for that reason Zaremba, who was driving the car down the ramp, could not stop it. That plaintiff said the car was in good condition when he brought it in. That the witness then got inside the car and showed plaintiff that there were no brakes by stepping on the brake pedal.

Plaintiff, Black, testified in rebuttal that he had been parking his car in defendant's garage for the last 2 or 3 years, and the evidence shows he had been driving the car almost daily and was an experienced driver. He further testified that he had no trouble with the brakes in driving from his home that morning to defendant's garage, which he said was a distance of about 12 miles. That prior to the accident his car had been looked over at least every 60 to 90 days, or even oftener—a thousand mile inspection. "I had it checked over a week or two previous to June 3, 1946. I had a general check, an oil change and had it greased and checked over and the motor checked over." That when he first saw his car after the accident it was on the mezzanine floor of defendant's garage, smashed into another car; that he did not see Mr. Barnum examine the brake tubing; that there was a fire in the front part of the car which they put out;

that Mr. Barnum told him the brakes were not working. "I wouldn't say he examined it. He pushed the pedal a couple of times. . . . The emergency brake is about four inches to the left of the clutch. I did not see any brake fluid on the ramp back of the car where the accident happened."

Henry Sadorf, called by plaintiff in rebuttal, testified that he was a partner and manager of a gasoline station and repair shop located on Irving Park Road; that after the accident June 3, they repaired plaintiff's car. "I have taken care of Mr. Black's automobile for two years. . . . Mr. Black brought his car in to be checked over at least once a month. In March or April of 1946 we put a 1946 engine in Mr. Black's car; overhauled his transmission, clutch and the brakes." That he saw Mr. Black's car a week or ten days before June 3, 1946. The car came in for a steady checkup "on that new engine and we check his wheel alignment, check his brakes on our machine, and grease it and change oil. . . . At that time the brakes were in perfect condition. We test the brakes by means of a brake machine." That plaintiff's car was towed to their place of business after the accident. That he examined the car. "The whole front end was smashed; both front fenders; the hood. The frame was damaged." That his partner examined the brakes; "There were no leaks in the brake system at that time." On cross-examination he testified: "I never got in the car to see whether the foot pedal worked on the brake. . . . When we checked on the brake system we found no rupture in the brake line or tubing. There was fluid in the system." This is substantially all the evidence in the record.

■ ■ The law is well established and both parties agree that the relation between the parties was that of bailor and bailee; that when plaintiff showed that the automobile was in good condition when he delivered it to defendant in its garage but was damaged

when it was returned to him, he has made out a *prima facie* case which the bailee may overcome by evidence to show that it was not negligent. *Clemenson v. Whitney,* 238 Ill. App. 308; *Byalos v. Matheson,* 243 Ill. App. 60, affirmed, 328 Ill. 269. Defendant's contention is that it produced evidence which showed that the damage to the automobile was caused solely by reason of the fact that the brakes would not work; and that Mr. Zaremba, who was driving the car down from the second floor, did all that the law required of him in operating the car. On the other hand, plaintiff's contention is that all the evidence shows that defendant failed to exercise the proper degree of care, as a matter of law, and that the judgment should be reversed and judgment entered in its favor, or in the alternative, that the finding and judgment is against the manifest weight of the evidence, therefore the judgment should be reversed and the cause remanded for a new trial. A number of authorities are cited, discussed and applied in able briefs filed by both parties, which we have considered. We have reached the conclusion that under all the evidence, Zaremba, in driving the car down the ramp, in failing to use the emergency brake, was guilty of negligence. We think he was not excused in this respect by his endeavor to put the car in reverse, as he testified he attempted to do.

Par. 211, Sec. 114, Ch. 95½, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 85.243], the pertinent provisions of which are: *"Brakes.* (a) Brake equipment required.

"1. Every motor vehicle, . . . when operated upon a highway shall be equipped with brakes adequate to control the movement of and to stop and hold such vehicle, including two separate means of applying the brakes, each of which means shall be effective to apply the brakes to at least two wheels. If these two separate means of applying the brakes are con-

nected in any way, they shall be so constructed that failure of any one part of the operating mechanism shall not leave the motor vehicle without brakes on at least two wheels. ....

"(b)  Performance ability of brakes.

"1.  The service brakes upon any motor vehicle . . . shall be adequate to stop such vehicle . . . when traveling 20 miles per hour within a distance of 30 feet when upon dry asphalt or concrete pavement surface free from loose material.

"2.  Under the above conditions the hand brake shall be adequate to stop such vehicle . . . within a distance of 55 feet and said hand brake shall be adequate to hold such vehicle . . . stationary on any grade upon which operated.

"3.  Under the above conditions the service brakes upon a motor vehicle equipped with two-wheel brakes only and when permitted hereunder, shall be adequate to stop the vehicle within a distance of 40 feet and the hand brake adequate to stop the vehicle within a distance of 55 feet."

It will be noted that this statute requires two brakes on every automobile—one designated "service brakes" and the other, the "hand brake" which is operated by the hand.  On the automobile involved the "service brakes" and the "hand brake" were each operated by foot.  Heretofore the hand brake was commonly referred to as the "emergency brake," *Clarke v. Storchak,* 384 Ill. 564–580, and served the same purpose as the second brake on the car in question.  Since Zaremba testified that he was an expert and had been engaged in hiking cars up and down in garages for a number of years, and that he was familiar with the mechanics of the car in question, we think that before defendant could be relieved of the *prima facie* case of negligence made by the plaintiff, Zaremba should have used the foot emergency brake.  And his

testimony that he could not reach it (for which he gave no reason) does not excuse him.

In *Nielsen v. Pyles,* 322 Ill. App. 574, plaintiff brought suit to recover damages for personal injuries. The evidence showed that plaintiff was seated in his automobile at a stop light at a street intersection waiting for the light to change. Defendant drove up behind the automobile and struck plaintiff's car as a result of which plaintiff was injured. The accident happened about 8 A. M. Defendant testified that he was driving his car, which was in good condition. That when he was about half a block from the place of the collision, he saw the red light was against him, put his foot on the brake and slowed up slightly. That he did not notice any difficulty with his brakes; that ''when he applied the brakes within 'say 20 feet of Nielsen's car' the brakes did not hold and he struck that car.'' He estimated he was going about 5 miles an hour at the time. The court there said (p. 582): ''Defendant saw plaintiff's automobile standing at the traffic light when he was one-half block away. His car was then traveling at 25 miles an hour. On observing plaintiff's car he slowed up and at the time of the collision he was traveling about 5 miles an hour. He had ample time in which to bring his car to a stop either by applying his foot brake or by using his emergency brake. We agree with plaintiff that it is logical to assume that had defendant's foot brake failed to work, the first thing he should have done would be to apply the emergency brake.''

In *Rochefort v. Tech Lines, Inc., et al.,* 186 So. 751, the court of Appeals of Louisiana in considering the duty of one driving an automobile under a somewhat similar situation as the one before us said (p. 753): ''He says that the brakes held for only a moment and then collapsed. He did not attempt to apply his emergency brake until 30 feet from the intersection. In

the meanwhile, he was working the pedals in an effort to get the foot brakes to hold. He should have immediately attempted to apply the hand or emergency brake and not to wait until within 30 feet of the corner to do so.''

For the reasons stated, the judgment of the Municipal court of Chicago is reversed and judgment is entered in this court in plaintiff's favor and against defendant for $188.91.

*Judgment reversed and judgment here.*

FEINBERG, J., concurs.

NIEMEYER, P. J., dissents.