[Civ. No. 4242.   Fourth Dist.   July 25, 1951.]

MELTON S. WALLACK, Appellant, v. RAYMOND BASS et al., Defendants; BARNARD ENGINEERING COMPANY, INC. (a Corporation), Respondent.

Edgar B. Hervey and Henry F. Walker for Appellant.

Gray, Cary, Ames & Driscoll for Respondent.

BARNARD, P. J.—This is an action for damages caused by the flooding of a basement. The owner of a building in San Diego leased the ground floor to one Bass, who subleased one storeroom and its basement to the plaintiff.

In February, 1949, the corporate defendant, which will be referred to as the defendant, was engaged, under a contract with the owner of the building, in installing an automatic sprinkler system. In doing this work it was necessary to run a 4-inch feed pipe through the wall of this basement, under the sidewalk and curb and beneath the pavement to the city's water main, which was near the other side of the street. It was also necessary to put another drain pipe and two smaller copper tubes through this wall. The defendant was to install the 4-inch pipe and the drain pipe as far as the curb line. The city was to install the 4-inch pipe from the curb line to its water main on the other side of the street, and was also to install the two copper tubes running from a meter box under-

neath the sidewalk, at the curb line, through the wall and to a detector check on the inside of the basement wall.

For these purposes, the defendant opened a hole about a foot square in this wall, and opened a trench about the same size under the sidewalk and to the curb line. On the afternoon of February 10, it finished the installation of the 4-inch pipe and the drain pipe as far as the curb line, having connected both pipes to the sprinkler system inside the basement wall. When the defendant's foreman left on that day the city's crew had a ditch opened across that half of the street, and was engaged in installing the 4-inch pipe from the water main and connecting it with the one installed by the defendant. When the foreman returned the next day, February 11, he observed that the 4-inch pipe had been connected and that the ditch dug by the city had been refilled, with a layer of asphalt over the top, apparently in the usual manner. He did not fill in the trench under the sidewalk, or stop up the hole in the wall, since the city had not yet installed and connected the copper tubes. These were not installed by the city until three days later.

It had been raining intermittently for several days, and began to rain hard about 6 o'clock on the evening of February 11. About 11:30 that night, while a man was parking his automobile at this curb, a rear wheel "just dropped out from under" and went into the ditch dug by the city. It left a large hole in that ditch, about 2 feet from the curb. A stream of water coming along the curb flowed into this hole, through the trench under the sidewalk and the hole in the wall, and flooded the basement, causing the damage complained of.

The plaintiff brought this action against the owner of the building, the lessee of the ground floor and the defendant, alleging that the defendant "did negligently open and cause to remain open a hole through the brick wall of said basement" in such a manner as to permit water to flow into the basement. The city was not made a defendant. During the trial, the action was dismissed as against the lessee of the ground floor, and a judgment of nonsuit was entered in favor of the owner of the building. A jury returned a verdict in favor of the defendant, and the plaintiff has appealed from the judgment. Four points are raised, all relating to claimed errors in the instructions. The plaintiff requested no instructions, and most of those given were supplied by the court.

After giving the usual general instructions the court stated that the allegation that the hole was negligently opened might be disregarded, since the opening of the hole was essential to

the work, and that the material issue here was as to whether or not the defendant had negligently allowed the hole to remain open, and whether this was a proximate cause of the damage. The court then clearly defined and explained negligence; told the jury to consider all the existing conditions as shown by the evidence, including the state of the work, what reasonable steps should have been taken, and what a reasonable person should have anticipated; and stated that negligence, if established, must be a proximate cause of the injury. After explaining the meaning of proximate cause at some length, the court said: ''In passing on the question of proximate cause, one of the tests to determine it and one of the essentials is that the result or the probability of damage was foreseeable. In other words, that a person doing the act in question, either did foresee or, in the exercise of ordinary care, should have foreseen that injury or damage would result from that act. It doesn't necessarily follow that he is required to have foreseen the particular act, but generally that he—it is required, before it can be held that negligence is the proximate cause of the damage, that he should have foreseen that injury or damage would result from that act.

''You will note that we have also stated that there should be no independent intervening cause. The mere fact that a person does an act which renders something possible or some damage possible is not sufficient of itself, and if there be some independent intervening act or negligence on some other—on the part of someone else following thereafter and which results in producing the damage or injury, then that independent intervening act is held in law to be the proximate cause of the injury and not the original act. The exception to that is, of course, that if the person who does the original act should in the exercise of ordinary care have foreseen the probability of the intervening act, then his original act still remains the proximate cause.''

The court then told the jury that it should first determine whether or not the defendant had failed to use ordinary care, by not closing up this hole; and that if it found there was any negligence in this regard it should then determine whether or not the defendant should have, in the exercise of ordinary care, anticipated the probability that some such a chain of events would follow as would result in injury to property in the basement. The court then said: ''Now, those briefly stated are the issues of fact for you to determine; the question to be

determined from the evidence that is introduced before you. The person who has the affirmative of an issue has the burden of establishing that issue by a preponderance of the evidence. In this case, the burden is upon the plaintiff to establish by a preponderance of the evidence all the essential elements of the cause of action. In other words, he must prove first by preponderance of the evidence that the defendant was negligent. He must prove further that such negligence, if established, was a proximate cause of the damage that he suffered, and if he has proved those matters, then he should prove by a preponderance of the evidence the amount and extent of his damage. When we use the term 'preponderance of the evidence,' we refer to the greater weight of the evidence, the evidence which is more than, or preponderates over or has more probative value than the evidence offered in contradiction thereto. The term has to do purely with the probative value of the evidence to its effect upon the mind of the jury and not necessarily the number of witnesses that may testify on any issue; so that sometimes it follows that the testimony of a greater number of wtinesses that does not produce conviction in the minds of the jury may be overcome by the testimony of a lesser number of witnesses or of one witness which does produce conviction in the minds of the jury. If upon any issue you find that the evidence is evenly balanced, with the result that you find yourself in doubt as to whether the issue has or has not been proven, then in such event the person that has the burden of the proof of that issue has failed to meet the burden and you should decide the issue against him. You will find in considering several cases that one of the most useful tools that you can use in an endeavor to arrive at the correct answer is to bear in mind the burden of proof in considering the evidence; consider which party has the burden of proving it and consider the evidence, determine whether or not you feel that the greater weight of the evidence is in favor of that issue; whether it has produced conviction in your mind. If so, then the party has met that burden; otherwise not.''

■ It is first contended that the court erred in withdrawing from the jury the question as to whether defendant was negligent in ''opening'' the hole in the basement wall. There was no evidence which would have supported a finding of negligence in opening this hole, as distinguished from permitting it to ''remain'' open. The only real issue was left to the jury, and no prejudice appears.

■ It is next contended that the instruction with respect to foreseeability as an element of proximate cause was errone-

ous. It is argued that the jury was told that it was necessary that it be foreseen, or should have been foreseen, that the injury *would* result, instead of being told that it was necessary only that injury *might* result; that the jury could have found that the defendant knew that the city had covered this trench with a soft asphalt covering; and that the jury could well have found that the defendant should have foreseen that "there might be a risk of harm to plaintiff."

There was no evidence that defendant knew that the city had filled in or covered this trench in an improper manner. In such a case it must appear that the injury was a natural and probable consequence of a wrongful act, and also one that might reasonably have been foreseen, under the circumstances, by a person using ordinary care. (*Johnson* v. *Union Furniture Co.*, 31 Cal.App.2d 234 [87 P.2d 917].)

The real question in this connection was whether or not an injury of some sort was to be anticipated; whether the probability of such an injury was reasonably foreseeable. The instruction when read as a whole, while not technically perfect, was sufficient to apprise the jury of the rule to be applied. It would be unreasonable to assume that the jury could have been misled by the use of the word "would," or that it gave to the instruction as a whole a meaning other than that intended by the court, that the probability of damage was foreseeable. The instruction could not have been prejudicial in view of the circumstances shown by the evidence.

It is further contended that the instruction about an intervening cause or act was inapplicable under the facts of this case, and that no instruction on that theory should have been given. It is argued that, having created the dangerous condition, the defendant could not rely on someone else to correct it; and that any possible negligence of the city in failing to properly close the ditch could not operate as an intervening cause so as to relieve the defendant from its own negligence.

The defendant did not at any time create a condition that in and of itself threatened any injury to the plaintiff or his property. The city opened the ditch in the street, without which the injury would not and could not have occurred, and then failed to properly close it. Water from this source could not have entered this basement had the street, beyond the curb, not been opened and improperly closed. The defendant had nothing to do with that, and without that independent act no injury could have resulted. There was evidence of an inter-

vening act of negligence which resulted in the injury, and there was no evidence that the defendant should have foreseen the probability of that intervening act. The case was largely tried on this theory and there was considerable, if not controlling, evidence in support thereof. While there was evidence that the defendant's foreman knew that the city customarily filled such ditches with dirt and a layer of cold asphalt on top, and that he knew that this was usually allowed to settle for a time before applying a more permanent top, and that it would settle some, there was no evidence that he knew or should have known that this particular work had been done in such a manner that it would disintegrate and cave in after only one day's use. The question was one of fact for the jury and an instruction on this subject was called for by the issues presented. (*Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213 [157 P.2d 372, 158 A.L.R. 872].)

Finally, it is contended that the instruction last above quoted was fatally defective because it told the jury that "conviction in the minds of the jury" was required. It is argued that the jury was thus told that, in deciding whether or not the plaintiff had met the burden of proof, it should be governed by whether the evidence produced conviction in its mind and not by a preponderance of the evidence.

Obviously, the word "conviction" was not correctly used here, but it does not necessarily follow that it was so misleading as to have been prejudicial. The specific meaning that will be accorded to words naturally depends on the way in which they are used, and is largely controlled by the context. The court here told the jury several times that the issues were to be decided by a preponderance of the evidence, and correctly defined and explained that term. It then explained that the number of witnesses was not controlling, and, apparently, used the word "conviction" in the interest of brevity. After covering the matter of burden of proof, it then stated that the test in that regard was still "the greater weight of the evidence," and added the explanatory clause "whether it has produced conviction in your mind." The second clause in the same sentence would naturally be taken as a part of and as related to the first clause; as telling the jury that it should satisfy itself, or be convinced, as to where the preponderance of the evidence lay; but not as referring to a new and higher degree of proof which should be taken as controlling. It is not to be supposed that the jury would ignore the greater part of this long instruction and give to the word "conviction" the strict technical meaning which it

has when used under some circumstances. Moreover, immediately after giving that instruction the court again told the jury that the issues of negligence and proximate cause were to be determined upon "a preponderance of the evidence."

In passing on a motion for a new trial the judge pointed out that this was not a close case, and said that the jury's finding that the defendant was not negligent "was one that I would probably be compelled to make myself." It must be held that any inaccuracies or errors which here appear are not sufficient to justify a reversal.

The judgment is affirmed.

Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 20, 1951.