[Civ. No. 21088. Second Dist., Div. Two. Dec. 21, 1955.]

LESTER REDFOOT, Appellant, v. J. T. JENKINS COMPANY et al., Respondents.

George L. Hecker and Orlan S. Friedman for Appellant.

William W. Waters for Respondents.

ASHBURN, J. pro tem.*—Plaintiff appeals from a judgment in favor of defendant J. T. Jenkins Company, rendered after an adverse verdict in an action to recover for fire damages to plaintiff's diesel tractor. Defendant's business included the repairing of such tractors or trucks. On August 21, 1950, plaintiff's driver took the tractor to defendant's shop for repair because the radiator was leaking. It was to be removed and an exchange radiator core to be installed but it was found that no exchange core was available and the tractor was kept in defendant's shop for the making of necessary repairs. It arrived at about noon on the 21st and the radiator shell, grill and core were removed and set aside. This work was finished about 4:30 p. m. Most of the men left the shop at 5, but Paul Sanchez, the shop foreman, left at about 6:30 p. m. At or near 5:55 on the next morning (the 22d) the truck was discovered to be burning. The fire was confined to the cab and other portions of the vehicle under the floor boards and back of the cab. No other vehicle or object was afire.

Action was brought against defendant as bailee upon the ground of negligence, it being alleged that defendant "so carelessly, negligently and improperly managed, controlled and cared for said tractor that same was allowed to and did catch fire and burn up." This quotation is taken from the first count of the complaint. The other causes of action, which also sounded in negligence, were dismissed. It was stipulated that the recoverable damage, if any, amounted to $5,389.64.

Plaintiff's chief complaint on appeal is that the court instructed the jury that the burden rested upon plaintiff to prove defendant was negligent, and refused to give plaintiff's requests to the effect that the burden of proof rested upon defendant. Specifically, complaint is made of the refusal of

---

*Assigned by Chairman of Judicial Council.

these two instructions: "If, from the evidence, you find that the defendants failed to prove the cause of the fire, or, having proved such cause, failed to prove that the fire was not caused by some negligent act or acts on their part or on the part of their employees, then you shall find against defendants and in favor of plaintiff Redfoot." "If, from the evidence, you find that the cause of the fire is unknown, then you shall find in favor of plaintiff Redfoot and against defendants."

It may be assumed that it is the law of California that proof of delivery of a vehicle to a bailee and his return of same in a damaged condition imposes upon the bailee the burden of proving that the damage occurred without any fault on his part—the burden of proof, not merely the burden of going forward with the evidence; also that that is true regardless of whether the complaint alleges negligence or conversion or other breach of contract. *George* v. *Bekins Van & Storage Co.*, 33 Cal.2d 834, 841 [205 P.2d 1037], holds: "It is clear, therefore, that in cases governed by the provisions of the uniform act, the burden of proving that the goods were not lost because of negligence is on the defendant, whether plaintiff frames his complaint on a negligence or a breach of contract theory." That case arose under the Uniform Warehouse Receipts Act, but that the same rule probably applies to other types of bailment appears from *Downey* v. *Martin Aircraft Service, Inc.*, 96 Cal.App.2d 94, 98 [214 P.2d 581]; *Gardner* v. *Jonathan Club*, 35 Cal.2d 343, 348 [217 P.2d 961]. It is not necessary to decide that question because plaintiff is not in position to capitalize the court's error, if one there be, into a reversal. ■ He must be held to the theory upon which he tried the case. (*Diel* v. *Baxter*, 58 Cal.App.2d 383, 387 [136 P.2d 789]; 4 Cal.Jur.2d, § 530, p. 380; 3 Cal.Jur.2d, § 142, p. 607; 3 Witkin Cal.Proc., § 96, p. 2264.)

As above shown, the complaint sounded in negligence. At page one of the reporter's transcript plaintiff's attorney brought up the subject of a right to rely on res ipsa loquitur. Opposing counsel asserted that "plaintiff always has the burden," resulting in this colloquy: "MR. HECKER: You have got the burden of going forward. MR. WATERS: That is not the burden of proof. MR. HECKER: You have a burden of going forward to rebut any evidence by reason of res ipsa loquitur." The transcript of the testimony covers 436 pages and not once did plaintiff's attorney assert that the burden of proof, as distinguished from the burden of going forward, rested upon defendant. During the argument of motion for

nonsuit he said: "On behalf of the plaintiff, your Honor, the plaintiff has assumed his burden of presenting a prima facie case that the negligence of the defendants caused this loss. . . . That rules out the possibility that this fire could have occurred from some other cause other than the negligence of the defendants, therefore making the inference applicable that res ipsa loquitur applies and therefore now the burden is on the defendant of going forward to show that the cause of the fire was not the negligence of the defendant or of the defendant's employees. . . . It is submitted therefore that all three elements of the doctrine have been met in the situation where we are going on the negligence aspect, rather than the conversion or breach of contract arising out of a bailment, and in that situation where the plaintiff has elected that theory and proceeded and has evidence of negligence in the case, he is entitled under the theory of the Leet case, which finally decided that even though you have specific acts of negligence you are still entitled to the doctrine of res ipso loquitur, he is entitled to the application of that doctrine." Later in the case counsel for plaintiff reopened the subject: "The only thing I think this does indicate, although we have not sued for conversion, if a prima facie case of negligence is made out—aside from the conversion aspect, if a prima facie case of negligence is made out, the defendant has a burden of going forward to show the loss or destruction was not caused by his negligence. . . . It seems to me the rule is, your Honor, that the plaintiff still has the burden of proof, but that once he has established a prima facie case of negligence, the defendant has the burden of going forward with the evidence which is what the res ipsa loquitur doctrine is, and which the BAJI instruction states."

The requested instructions first injected the proposition that the ultimate burden was on the defendant. When they were presented does not appear, but that is immaterial for plaintiff asked for conflicting instructions on the subject and hence cannot complain of the giving of those of defendant which agreed with one of his own requests. The proposed instructions placing the burden on the defendant have been quoted. In addition thereto plaintiff requested a series of res ipsa loquitur instructions, one of which contained this: "Plaintiff's burden of proving negligence by a preponderance of the evidence is not changed by the rule just mentioned. It follows, therefore, that in order to hold the defendant liable, the inference of negligence must have greater weight,

more convincing force in the mind of the jury, than the opposing explanation offered by the defendant. If such a preponderance in plaintiff's favor exists, then it must be found that some negligent conduct on the part of defendant was a proximate cause of the injury; but if it does not exist, if the evidence preponderates in defendant's favor, or if in the jury's mind there is an even balance as between the weight of the inference and the weight of the contrary explanation, neither having the more convincing force, then the verdict must be for the defendant.'' ▇ *Jansen* v. *Southern Pac. Co.*, 112 Cal.App.2d 833, 845 [247 P.2d 581]: ''It is well established that 'A party cannot complain of an instruction given at his own request or of an error in an instruction given at the instance of his adversary when he requests a substantially similar one.' [Citing cases.]'' Accord: *George* v. *City of Los Angeles,* 51 Cal.App.2d 311, 319 [124 P.2d 872]; *Miller* v. *Dollar Steamship Lines, Inc.,* 19 Cal.App.2d 206, 211 [64 P.2d 1163]; *Newman* v. *Los Angeles Transit Lines,* 120 Cal.App.2d 685, 697 [262 P.2d 95]; *Bates* v. *Newman,* 121 Cal.App.2d 800, 808 [264 P.2d 197]; 4 Cal.Jur.2d, § 557, p. 423.

▇ Appellant's counsel was correct in his insistence that the facts gave rise to a presumption of negligence on defendant's part, a presumption which is the equivalent of res ipsa loquitur. IX Wigmore on Evidence (3d ed.), § 2508, p. 375: ''Where goods have been committed to a *bailee,* and have either been lost or been returned in a damaged condition, and the bailee's liability depends upon his negligence, the fact of negligence may be presumed, placing on the bailee at least the duty of producing evidence of some other cause of loss or injury. But the application of this presumption cannot be said to have received definite phrasing for the different kinds of bailees.'' 4 Shearman and Redfield on Negligence (rev. ed.), section 651, page 1570, and 7A Blashfield Cyclopedia of Automobile Law and Practice (permanent ed.), section 5043, page 578, are to the same effect. *Romney* v. *Covey Garage,* 100 Utah 167 [111 P.2d 545], applied this rule to an action against a garage owner for injuries to plaintiff's automobile which was stolen from the garage, damaged by the thieves and redelivered in a damaged condition. At page 547: ''This holding puts negligence in ex delicto bailment cases and negligence in other tort cases or a parity. Moreover, it brings the ex-contractu action for breach of the contract of bailment because of loss or damage

in line with the action for negligence for such loss or damage. There is no real reason why the form of action should materially change the remedy or fasten on the plaintiff a greater burden in one case than in the other. If the law is otherwise, holdings which will bring it in accord with this policy are overdue.'' Such presumption has been held in numerous cases to apply in favor of an automobile owner whose vehicle has been damaged or destroyed or stolen while in defendant's garage or repair shop. Some of them are: *Welch* v. *L. R. Cooke Chevrolet Co.*, 314 Ky. 634 [236 S.W.2d 690]; *Trammell* v. *Whitlock*, 150 Tex. 500 [242 S.W.2d 157]; *Wyatt* v. *Baughman*, —— Utah —— [239 P.2d 193]; *Carlton* v. *Sley System Garages*, 143 Pa.Super. 127 [17 A.2d 748]; *Willamette Tug & Barge Co.* v. *Commercial Dispatching Corp.*, 180 Ore. 657 [178 P.2d 698, 701]; *Black* v. *Downtown Parking Stations*, 332 Ill.App. 418 [75 N.E.2d 395, 398]; *Old Hickory Parking Corp.* v. *Alloway*, 26 Tenn.App. 683 [177 S.W.2d 23, 25]; *Oliver Cadillac Co.* v. *Rosenberg*, (Mo.App.) 179 S.W.2d 476, 480; *Carothers* v. *Moore*, (Tex.Civ.App.) 183 S.W.2d 987, 988; *Afflerbaugh* v. *Geo. Grede & Bro.*, 182 Wis. 217 [196 N.W. 224, 225]; *Hobbie* v. *Ryan*, 130 Misc. 221 [223 N.Y.S. 654, 656]; *Beck* v. *Wilkins-Ricks Co.*, 179 N.C. 231 [102 S.E. 313, 314, 9 A.L.R. 554]; *Potts* v. *Carter-Cobb Motor Co.*, 191 N.C. 821 [131 S.E. 739, 740]; *Hutchins* v. *Taylor-Buick Co.*, 198 N.C. 777 [153 S.E. 397, 398]. See also annotations in 9 A.L.R. 559; 71 A.L.R. 767; 151 A.L.R. 716, 724; 16 A.L.R.2d 805, 814.

Plaintiff would have been entitled to the requested res ipsa loquitur instruction, upon which he had insisted from the beginning, were it not for considerations about to be mentioned. ▉ Plaintiff's proof was concerned with establishing the cause of the fire, both circumstantially and through expert testimony, but that would not preclude application of the res ipsa doctrine so long as plaintiff's own evidence or that of his opponent did not dispel the inference. ▉ In *Leet* v. *Union Pac. R. R. Co.*, 25 Cal.2d 605 [155 P.2d 42, 158 A.L.R. 1008], the court was concerned with this question and concluded, at page 621, as follows: ''The case goes to the trier of fact with the general inference of negligence, plus other evidence of specific acts of negligence, to be weighed against defendant's showing. There is no reason for applying a different test for determining when the inference is wholly dispelled as a matter of law in a case where res ipsa loquitur is applicable, than is used in the case of any other

inference. The instances in which an inference is dispelled are rare (see *Engstrom* v. *Auburn Auto. Sales Corp.*, 11 Cal. 2d 64 [77 P.2d 1059]; *Blank* v. *Coffin*, 20 Cal.2d 457 [126 P.2d 868]). Whatever the test may be, there is no occasion for a different one when considering the inference arising from the application of the doctrine of res ipsa loquitur. Hence, we conclude that evidence of specific acts of negligence does not deprive plaintiff of the benefit of the doctrine, unless the case is one where the inference would be dispelled as a matter of law under the same rules that apply in cases generally.'' ■ The Engstrom case, to which reference was made, holds, at page 70, that a presumption may be dispelled by evidence produced on behalf of the person relying upon it, but not by evidence produced by the opposite party except in rare cases. With respect to inferences it is said: ''On the other hand, an *inference* is dispelled as a matter of law when it is rebutted by clear, positive and uncontradicted evidence which is not open to doubt, even though such evidence is produced by the opposite side. (*Maupin* v. *Solomon*, 41 Cal.App. 323, 324-326 [183 P. 198]; *Martinelli* v. *Bond*, 42 Cal.App. 209 [183 P. 461].) Of course, if the opposition evidence is conflicting, vague or uncertain, or is weakened by contradictions or improbabilities, an inference is not dispelled as matter of law.'' ■ *Rose* v. *Melody Lane*, 39 Cal.2d 481, 487 [247 P.2d 335], says: ''When res ipsa loquitur is applicable, as it is here, an inference of defendant's negligence may be drawn. On appeal that inference is sufficient to sustain a verdict against defendant unless it is overcome by plaintiff's own evidence (see *Binns* v. *Standen*, 118 Cal.App. 625, 627-628 [5 P.2d 637]; *Gritsch* v. *Pickwick Stages System*, 131 Cal.App. 774, 785 [22 P.2d 554]; Prosser, *Res Ipsa Loquitur in California*, 37 Cal.L.Rev. 183, 212-214; *cf. Leet* v. *Union Pac. R. R. Co.*, 25 Cal.2d 605, 621-622 [155 P.2d 42, 158 A.L.R. 1008]) or unless it is conclusively rebutted by evidence that is 'clear, positive, uncontradicted, and of such a nature that it can not rationally be disbelieved.' (*Blank* v. *Coffin*, 20 Cal.2d 457, 461 [126 P.2d 868]; *Leet* v. *Union Pac. R. R. Co.*, 25 Cal.2d 605, 622 [155 P.2d 42, 158 A.L.R. 1008].)''

The most recent decisions of the Supreme Court prescribe as the ultimate test of applicability of res ipsa loquitur an answer to the question of ''whether it can be said, in the light of common experience, that the accident was more likely than not the result of their [defendants'] negligence. [Citing cases.] ■ 'Where no such balance of probabilities in favor

of negligence can be found, res ipsa loquitur does not apply.' " (*LaPorte* v. *Houston*, 33 Cal.2d 167, 169 [199 P.2d 665].) The rule is thus phrased in *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436, 446 [247 P.2d 344] : "In summary, it appears from the foregoing that, as a general rule, res ipsa loquitur applies where the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the person who is responsible." See also *Knell* v. *Morris*, 39 Cal.2d 450, 453 [247 P.2d 352] ; *Stanford* v. *Richmond Chase Co.*, 43 Cal.2d 287, 292 [272 P.2d 764].

The search for the existence of such a probability of negligence on defendant's part presents a question of law in the case at bar, for the inference when it arises is a compulsory one (*Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682, 688-691 [268 P.2d 1041]), and the question of whether or when it arises does not present a question for the jury's determination. If the presumption was dispelled at bar, then the point was reached where there was no probability of negligence of defendant and therefore no error in refusing to give a res ipsa loquitur instruction. This question requires a review of the evidence bearing on the point.

The only trouble in the tractor was the radiator. It had to be removed, and with it the shell and grill. This necessitated a disconnecting of the wires leading to the parking lights which were set in the fenders. The vehicle was equipped with two 12-volt batteries located under the floor boards of the driver's cab. The wiring consisted of a primary and a secondary circuit. The lights are on the secondary system. Two large primary wires lead from the battery, a 24-volt wire to the starting system and a 12-volt wire goes up under the dash; there the secondary wires connect with it; they pass through a series of fuse boxes or circuit breakers and supply the various lights, including the parking lights. The fire was confined to the area of the batteries and the primary wiring system. None of it was forward of the fire wall, which is immediately in front of the instrument board, although most of the wiring of both systems was destroyed. Every witness who touched upon the subject expressed the opinion that the fire was caused by a short circuit in the wiring.

Plaintiff's evidence on that subject was that of Captain Carl Halter, formerly of the Los Angeles Fire Department. He said: "It is my opinion that the fire would have been

caused by the wiring in the rig, by the electrical wiring in the tractor. . . . Experience teaches that the vast majority of fires that happen in motor vehicles of any kind in storage are wiring fires, shorts of electrical circuits in the apparatus of the motor vehicle.'' He gave this further opinion: ''I think that failure to disconnect the wiring of the tractor from its source of electrical energy is the probable cause in this thing. If the batter [sic] cables had been disconnected, it would have been impossible for an electrical short to occur in the rig, and thereby we could not have had an electrical fire.'' Also, that it was his opinion that a short caused the fire because ''there was energy from the battery that was flowing in the wiring.'' He also said that this fire occurred within an hour after the shorting took place; if the fire started at 5 o'clock, the short must have occurred some time after 4 o'clock; that the ''proximate cause'' of the fire was a short circuit; that if there had been a short at 6 p. m., it would have been discovered. The witness did not say or suggest that the short was in the secondary circuit.

The truck came into the shop at noon and work started on it in a few minutes; no one saw any lights burning, and witness Graham who did the work on the truck said they were not burning. Paul Sanchez, the shop foreman, said he knew the switches were off because the lights were off. Captain Halter testified that if no lights were burning the light switch would be off, and if it was off the wire would not be energized and could not cause a short; that if the wire leading to the parking lights were shorted the fuse would burn out; that in order for the light wire to cause a fire it would have to be grounded while energized and this would require the light switch to be on and the fuse or circuit breaker would have to fail to work. ''Q. But isn't that set at a point to avoid a fire hazard, that is the purpose of that? A. That is the purpose of them, yes, sir: that is the purpose.'' Asked, ''what reasonable safety precautions should be employed to prevent short circuits or fires in the electrical wiring system of Diesel tractors,'' he replied: ''I think it would be an entirely reasonable safety precaution to have simply disconnected the battery cable. Thereby, it would avoid any possibility of electrical short circuits in the wiring of the vehicle.'' He was then asked: ''Would also checking the switches be a reasonable precaution?'' and said: ''If you were going to leave the battery connected up, it would, but if you were to disconnect the battery cable, you would completely eliminate the possibility of it from that source.'' He would expect the mechanic

to take steps to prevent a short, to check switches if the battery were not off, or to disconnect the battery. Any inspection with a view to predicting a short would have to be very, very careful and would have to locate a defect in order to afford any dependable information, he further said. There were 20 to 30 feet of primary wiring and an inspection could not extend to all of it. There is nothing in Captain Halter's testimony to indicate a possibility, much less a probability, of a fire originating in careless handling of a light wire except upon the assumption of a breaking and shorting of the wire when energized, with lights burning and switch on, and circuit breaker not working. There was no evidence to substantiate any of these assumptions.

Captain Halter's method of preventing a short and a fire would be to disconnect the battery. The uncontradicted evidence of the defense is that there is no custom or usage in the trade to disconnect the batteries in doing a radiator job, such as the one in question. The claim that this should have been done, or that the jury could have so found, calls for a degree of foresight heavier than that imposed by law. "It is also well settled that in cases such as this it must appear not only that the injury complained of was the natural and probable consequence of the wrongful act, but also that such consequence might reasonably have been foreseen by a person of ordinary intelligence in the light of attending circumstances, unless the act is one of wanton wrong (*Bush* v. *Weed Lumber Co.*, 63 Cal.App. 426 [218 P. 618]; *Newman* v. *Steuernagel*, 132 Cal.App. 417 [22 P.2d 780]). As said in the former case, ' ''One is bound to anticipate and provide against what usually happens and what is likely to happen, but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what is only remotely and slightly probable. A high degree of caution might and perhaps would guard against injurious consequences which are merely possible; but it is not negligence in a legal sense to omit to do so''; and in the case of *Mayne* v. *Chicago etc. Ry. Co.*, 12 Okla. 10 [69 P. 933], we find language of similar import: ''What is usual, the law requires a person doing a wrong to anticipate and provide against, but the law does not require that even a wrongdoer shall anticipate and provide against the unusual.'' ' The same doctrine is summarized in California Jurisprudence (vol. 19, p. 562) as follows: 'In order to warrant a finding that negligence or an act not amounting

to wanton wrong is the proximate cause of an injury, it must not only appear that the injury is the natural and probable consequence of the negligent or wrongful act but that it ought to have been foreseen in the light of attendant circumstances. And if the wrong and the resulting damages are not known by common experience to be usually and naturally in sequence, and the damage does not in the ordinary course of events follow from the wrong, then the wrong and the damage are not sufficiently conjoined to support an action.' '' (*Johnson* v. *Union Furniture Co.*, 31 Cal.App.2d 234, 238 [87 P.2d 917].) To the same effect are *Wallack* v. *Bass*, 105 Cal.App. 2d 638, 643 [234 P.2d 160]; *Girard* v. *Monrovia City School Dist.*, 121 Cal.App.2d 737, 742 [264 P.2d 115]. ▮▮▮ While it is generally a question of fact whether the test of reasonable foreseeability has been met (*Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213, 217 [157 P.2d 372, 158 A.L.R. 872]), it is not always so. ▮▮▮ It seems reasonably clear that plaintiff's own evidence rebutted the inference of defendant's negligence, but, assuming the contrary, it will appear from a summary of the defense evidence that that inference was dispelled as a matter of law because it was rebutted by clear, positive and uncontradicted evidence produced by the defense which is not open to doubt. (*Engstrom* v. *Auburn Auto. Sales Corp.*, 11 Cal.2d 64, 70 [77 P.2d 1059].)

Defendant's witnesses were Basil G. Ferrel, service manager of International Harvester Company; defendant J. T. Jenkins; one Ovila A. Richer, defendant's shop superintendent; Fred L. Graham, defendant's mechanic who worked on the tractor; and Paul Sanchez, defendant's shop foreman. They uniformly testified that there was no custom or usage in the trade to disconnect the batteries for a radiator job, that that is done only when working on the primary circuit. Their testimony establishes without doubt that the lights on the tractor were not burning; if they had been they would have attracted immediate attention; when they are not burning the light switch is off; the current disconnected; in order to have a short in a light wire (the only ones in the area of the work done) the wire would have to be disconnected or torn in two, then be grounded; it would have to be a "hot" or energized wire and that would mean that the lights must be on immediately before disconnecting the wire; the heat of the short would have to travel toward the primary system, but before it could get there two circuit breakers would interrupt and break the current and prevent any fire. The defense witnesses uniformly and categorically testified that a short

in the secondary system would not cause a fire because it could not do so. Mr. Ferrel testified: "Q. If we assume that the light switch is on, sir, and a short occurs at some time after the workmen have left, can there be enough energy generated to overcome the effect of the circuit breaker and cause a fire to start? A. No; positively not." There is no evidence from any source to the contrary except the theory of Captain Halter, which was based upon a series of assumptions not supported by any evidence, direct or indirect.

The witness Graham, who did the work on this job, described it as follows: He disconnected the top radiator rod, the top radiator hose and the air line; also the radiator hose on the bottom; and the two nuts on the bottom that hold the radiator in the frame; he also disconnected a parking light wire on either side of the radiator and then lifted the radiator off the tractor with a crane. He said there were no lights burning. There was no occasion for him to get inside the cab and he did not do so. There is no evidence, direct or circumstantial, to the contrary.

According to Captain Halter many, many fires occur in parked vehicles, they may occur at any hour of day or night and regardless of how long the vehicle has been parked. The primary wiring has no circuit breaker; it is heavily insulated and some 20 to 30 feet in length; bad insulation is the ordinary cause of a short in the primary system; this is caused by battery acid. According to Mr. Sanchez: "Where the insulation becomes ragged from acid. As the truck runs down a road the acid splashes from the batteries and causes it to fall away from the copper and become bare, and they can short out against the frame or the battery box or any piece of metal." High temperature accelerates the process. This tractor was used on the Los Angeles-Albuquerque run, making a total of 3,300 miles a week and traveling night and day. In the Arizona and New Mexico deserts the weather was a little warm "for sure," according to plaintiff. All the defense witnesses said that a short in the primary system caused the fire in question, and the circumstances uniformly point to that conclusion. Mr. Ferrel, the International Harvester expert, testified that it is a safe practice in doing such a job as the one in question not to disconnect the battery or inspect the light switches or disconnect any fuel lines. He also testified: "Q. Now, do you know of any custom or usage in the trade requiring Diesel trucks such as the plaintiff's truck in this case wherein the repairman, the garageman,

or serviceman that makes these repairs is bound to anticipate that some short may occur in the wiring, and anticipating that the short would occur, he would then disconnect the batteries—do I make myself clear? A. Yes. He would not disconnect the batteries. . . . Q. Do you know of any custom or usage in the trade or your line of business repairing trucks wherein the repairman is bound to anticipate that some truck he is working on is going to short out during the nighttime? A. No, I don't know." Being qualified as an expert he, like Captain Halter, was entitled to speak to the ultimate jury question. (*People* v. *Martinez,* 38 Cal.2d 556, 564 [241 P.2d 224].)

The evidence at bar would not warrant a finding that defendant was negligent in failing to anticipate a fire through failure to disconnect the batteries or that such omission was negligent. The presumption of negligence created by application of the res ipsa loquitur rule was dispelled in this case, just as it was with respect to defendant Silva in *Stanford* v. *Richmond Chase Co., supra,* 43 Cal.2d 287, 294. It follows that there was no error in refusal to give plaintiff's requested instructions upon that subject.

 Plaintiff also contends that these instructions, which were given at defendant's request, were erroneous and prejudicial: "The defendant in the exercise of ordinary care was not required to anticipate that plaintiff's truck would catch fire during the night from a short circuit not caused by any act or omission on the part of the defendant, and in such case was not required to take any precautionary measures, such as disconnecting the batteries to prevent such short circuit." "It is now in evidence that the cause of the fire was a short circuit of the truck's electrical system. If you should find from all of the evidence that this short circuit was not caused by any act or omission on the part of the defendant, even though such short circuit could have been prevented by disconnecting the batteries, your verdict must be for the defendant." From what has been said in discussing the matter of res ipsa loquitur it appears that there was no error in the giving of these instructions.

 Plaintiff also argues that he should have been granted a mistrial because of the interjection in the presence of the jury of the subject of insurance. We have examined the record in this connection and find that there was no deliberate or prejudicial mention of insurance, and that this case falls within the purview of *Speck* v. *Sarver,* 20 Cal.2d 585, 590

[128 P.2d 16], wherein it is said: "While the courts have condemned repeatedly attempts to bring before the jury the fact that insurance exists, their condemnation extends only to cases where there is an 'avowed purpose and successful attempt' to bring the fact before the jury. It does not extend to cases where the information comes in, incidentally, in attempting to prove other facts, or where the record does not show that the particular answer was sought or anticipated."

The judgment is affirmed.

McComb, Acting P. J., and Fox, J., concurred.