## Welch v. L. R. Cooke Chevrolet Co.

December 5, 1950.

Rehearing denied March 9, 1951.

Chester D. Adams, Judge.

Stoll, Keenon & Park for appellant.

Wm. B. Gess for appellee.

JUDGE HELM—Reversing.

On January 15, 1947, appellant, John D. Welch, delivered his 1938 Chevrolet automobile to appellee, L. R. Cooke Chevrolet Company, for repairs. On January 21, 1947, appellee's garage and 33 automobiles, including appellant's automobile, were completely destroyed by fire. Appellant instituted this action against appellee seeking a recovery of $850 for "the loss and damage to his automobile * * * caused by the negligence of the defendant, its agents, servants and employees while engaged in the defendant's business. From a judgment for appellee, appellant appeals.

At a trial appellant testified that at the time he delivered his car to appellee for repairs, it was in good condition, except for a missing headlight, and some dents in the front fender and body; that it had been driven some 90,000 miles, and that it was worth $850 at the time it was destroyed. Appellant then rested. Appellee

introduced L. R. Cooke, president of the L. R. Cooke Chevrolet Company, and several of its employees. They testified as to the various precautions taken to prevent fires. They had "No Smoking" signs; furnished mechanics with rags to wipe up oil; cleaned the stalls each evening; painted the stalls; had fire extinguishers; cleaned the garage each evening with cleaning powder; on Saturday cleaned the garage with noninflammable cleaning solvent; had an exhaust system, tubing fastened to the exhaust pipe of each automobile that was being repaired, with over-head exhaust system to take off the fumes.

Several witnesses testified that the fire started in the wash rack, or wash room, in the rear of appellant's garage. This room was open in front, with sheet metal sides and walls in which cars were washed. The room had two water heaters for heating water to wash cars. They were heated by gas. Calvin Waits, an employee of appellee, was working on a truck in the wash rack immediately prior to the fire. He was trying to thaw ice out of the gasoline line of the truck. William Kingsley, a safety engineer, testified that they "okayed" the gas flames for the water heaters in the wash rack on the idea that the room would be used only for washing vehicles. It was not contemplated that the room would be used for thawing ice out of gasoline lines by the application of heat. The fire started in the wash rack on the truck on which Waits was working. The witnesses heard a "dull explosion, something like you would drop an oil drum," in the rear of the garage. They looked in that direction; the truck in the wash rack was on fire "all over"; the fire spread up the walls to the ceiling and roof, and then to the rest of the building. It was shown that gasoline at times gives off vapor that is combustible. None of the witnesses produced by appellee saw the fire start, or could offer any explanation of its origin. After the fire was discovered, they removed all of the cars they could from the garage, but 33, including appellant's car, were destroyed by the fire.

Calvin Waits, who was working on the truck in the wash rack, was not called by appellee as a witness. It is shown that he worked for appellee for about three months after the fire, and then moved to the State of Washington. He had a cousin, Horace Waits, who was

working for appellee at the time of the trial. He testified that he had heard from Calvin about three months previous to the trial, and that he had his address at his home. Appellee points out that Calvin Waits could not have been subpoenaed, and that his appearance would have entailed a considerable expense. Appellee says, "To be sure, Calvin C. Waits could have testified as to his actions immediately before, during and after the fire, but such testimony would have been merely cumulative."

Appellant maintains that when he, as bailor, delivered to appellee, as bailee, his automobile in good condition and it was destroyed while in appellee's possession, a prima facie case for appellant was established and the burden of proving that the damage was not due to its negligence shifted to appellee; that appellee failed to satisfy that burden when Calvin Waits, the only witness who could have explained how the fire started, and who was an employee of appellee at the time of the fire, and whose testimony was available to appellee, was not called as a witness by appellee.

Appellant maintains that the evidence introduced was insufficient to overcome the presumption; that the evidence leaves the facts open to conjecture and the cause of the damage in doubt; that if a plaintiff establishes a negligence under the doctrine of res ipsa loquitur and defendant's testimony leaves the cause of the accident in doubt, the plaintiff is entitled to a directed verdict; and, that if a defendant fails to produce, when available, testimony of the only witness in position to give direct testimony on an issue which the defendant has the burden of proving, the plaintiff is entitled to a directed verdict.

In the case of Threlkeld v. Breaux Ballard, Inc., 296 Ky. 344, 177 S. W. 2d 157, 151 A. L. R. 708, we adopted the minority view that if a bailor makes out a prima facie case and it appears that the bailed goods were damaged or destroyed by fire, the bailee has the burden of proving that the fire resulted otherwise than from his negligence. This court has not heretofore considered the nature of the proof necessary to meet this burden.

The situation here is related to one giving rise to the doctrine of res ipsa loquitur, though the problems

presented are not wholly identical. In the case of Reibert v. Thompson, 302 Ky. 688, 194 S. W. 2d 974, 976, commenting on the doctrine of res ipsa loquitur, we said: "* * * In the absence of explanation, or proof of intervening agency, or contributory negligence, it affords reasonable evidence that the accident arose from want of care. It is true that the presumption may be overcome by evidence showing the cause of the occurrence, or that the cause is attributable to some intervening act or thing, but here there are no facts which tend to support a contradictory or inconsistent inference, nor is there a basis in the proven facts to deduce even a probability of some intervening cause."

We believe that in a case where the burden is on the bailee to prove that the loss resulted without his negligence, there must be some substantive proof showing that the fire, as in the instant case, resulted from a non-negligent cause. The appellee in this case has not, in our opinion, met that burden. The appellee has introduced proof of a general nature showing some precautions which it took with reference to certain fire hazards. Appellee has, however, failed to show that it exercised due care with reference to this particular fire; and appellee failed to introduce the testimony, by deposition or otherwise, of the one man who was closely associated with the origin of the fire, and who might reasonably be expected to know the cause of it. See Pacific Fire Ins. Co. v. Eunice Motor Co., La. App., 46 So. 2d 363, rehearing refused, La. App., 47 So. 2d 403. Under these circumstances, we believe the appellee failed to sustain the burden of proof. When an issue is left in doubt by the proof in a case, so that a jury would be required to speculate, that party must lose upon whom the burden ultimately rests.

If upon another trial the testimony is substantially the same as that shown in this record, the court should direct a verdict for appellant.

The judgment is reversed for proceedings not inconsistent with this opinion.