**D. H. OVERMYER COMPANY, Inc.,**
**Appellant,**

v.

**HIRSCH BROS. & COMPANY, Inc.,**
**Appellee.**

Court of Appeals of Kentucky.

Nov. 6, 1970.

Thomas W. Bullitt, Samuel G. Bridge, Jr., Bullitt, Dawson & Tarrant, Louisville, for appellant.

Kenneth S. Handmaker, Louisville, for appellee.

PALMORE, Judge.

Beginning in July of 1966 Hirsch Bros. & Company, Inc. (hereinafter Hirsch), stored in the commercial warehouse of D. H. Overmyer Company, Inc. (hereinafter Overmyer), at Louisville, Kentucky, several thousand cases of pickles. In February of 1967, when Hirsch withdrew the last of the pickles from storage it was discovered that over 900 cases were missing. Hirsch then brought this suit against Overmyer for the value of the lost goods and obtained a judgment in the principal sum of $3,098.52, from which Overmyer appeals.

The written storage contract between the parties provided as follows:

"Warehouseman's responsibility for storage and handling is limited to 'reasonable care as a reasonably careful owner of similar goods would exercise.'

Warehouseman shall not be liable for any loss or damage to the good [sic] which could not have been avoided by the exercise of such care nor for loss or damage to insured goods as provided in section 7(c)."

This contractual language does not differ materially from the obligation imposed by the Uniform Commercial Code [1] as adopted by this state effective July 1, 1960, or from the statutory law in force prior to that time.[2]

The evidence was heard by a commissioner under an agreed order of reference, following which the commissioner filed his report, Overmyer filed exceptions, and the report ultimately was confirmed except for the precise amount of recovery. The portion of the commissioner's report pertinent to this appeal is as follows:

"The defendant next contends that it completely rebutted the plaintiff's prima facie case of negligence by showing that its employees were on duty at all times when merchandise was being loaded. On the other hand, the defendant's records established that it received the pickles but failed to account for their removal. Furthermore, there was no evidence or [sic] other intervening cause of loss of the pickles. Indeed, the defendant's foreman testified that he was out of town during the month of February, 1967, and he could only say that arrangements were made for employees to be present when the warehouse was open. No witness testified that employees were in fact present at all times the warehouse was open.

---

1. "A warehouseman is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances but unless otherwise agreed he is not liable for damages which could not have been avoided by the exercise of such care." KRS 355.7–204(1), of which the official comment of the UCC drafters says, "It is unlikely that this new language will be construed differently from the 'reasonably careful owner' norm of former legislation."

2. "A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonable [sic] careful owner of similar goods would exercise, but he shall not be liable, in the absence of any agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care." KRS 358.210, repealed eff. July 1, 1960.

Under these circumstances, your Commissioner finds that the plaintiff has proved by circumstantial evidence a prima facie case which remains unrebutted by the defendant. Accordingly, your Commissioner finds that the defendant is liable to the plaintiff for the loss of the pickles."

It appears from the evidence that toward the end of 1966 Overmyer decided to close its warehouse operation in Louisville and began to release or transfer its personnel and to expedite getting rid of the remaining merchandise it had on storage there. During this time the warehouse in question was in charge of a general manager named Sipes. There came a time when Sipes and a "casual laborer employe" named Hall were the only two employes left to look after the warehouse. From about the first of December on Sipes was frequently out of town and only Hall was present, and he was given permission to leave except at such times as Hirsch wished to withdraw some of its merchandise. Hall ceased working for Overmyer on February 3, 1967, after which Sipes arranged with the manager of a neighboring company, in return for the free use of a fork lift truck, to load out pickles as Hirsch sent for them. Neither Hall nor the manager of the neighboring company testified.

The last physical inventory of the Hirsch pickles stored in the warehouse was taken by Sipes in January 20, 1967, at which time he says there was no discrepancy. There was a break-in thereafter, but according to Sipes none of the pickles were taken. The last of the pickles on hand were taken out by Hirsch on February 28, 1967.

Overmyer had no explanation for the shortage. Sipes testified that the warehouse was fully enclosed and equipped with locks at the doors and openings. Though he was not personally present at all times, he made the aforementioned arrangements for other persons to do what was necessary.

The suit is on the storage contract, which makes negligence the criterion of recovery. The parties agree that proof of the shortage established a prima facie case of negligence. They agree also that the warehouseman was not an insurer. The point of difference sifts down to the procedural effect of the evidence produced by the defense.

In Welch v. L. R. Cooke Chevrolet Co., 314 Ky. 634, 236 S.W.2d 690 (1951), an automobile was destroyed by fire while in a commercial garage for repairs. This court held that upon the bailee's failure to show by "some substantive proof" that the fire originated from a non-negligent cause the owner of the automobile was entitled to a directed verdict. "It is the settled rule of law that once a party establishes a prima facie case, judgment will go in his favor unless the opposite party produces evidence sufficient to overcome the prima facie presumption." Threlkeld v. Breaux Ballard, 296 Ky. 344, 177 S.W.2d 157, 161, 151 A.L.R. 708 (1944).

■ It has been observed in subsequent opinions that the procedural effect of a rebuttable presumption, or prima facie case, is not a shifting of the burden of proof, and the defending party need not adduce "substantial" countervailing evidence in order to force submission of the issue to the fact-finder (whether it be a jury or the trial court). It is necessary only that his evidence inject enough doubt that it cannot be said that there is but one conclusion reasonable men could reach. See Scot v. Patterson, Ky., 400 S.W.2d 526, 530–531 (1966); Bell & Koch v. Stanley, Ky., 375 S.W.2d 696, 697 (1964); and Lee v. Tucker, Ky., 365 S.W.2d 849, 851–852 (1963).

■ In this case we need not determine whether Overmyer's evidence was sufficient to prevent Hirsch's being entitled to a judgment as a matter of law, because the question really is whether it conclusively negated Overmyer's negligence as the cause of the loss and this entitled Overmyer to a judgment as a matter of law. Our opinion is that it did not. As in Welch v. L. R.

Cooke Chevrolet Co., 314 Ky. 634, 236 S.W. 2d 690 (1951), in order to rebut the presumption created by the evidence of an unexplained loss it was necessary for Overmyer to show that it resulted from a non-negligent cause. It seems to us that it would be rather difficult if not impossible to prove a non-negligent cause without showing what the cause was.

The judgment is affirmed.

All concur.