BORG–WARNER ACCEPTANCE
CORPORATION, Appellant,

v.

FIRST NATIONAL BANK OF PRES-
TONSBURG, Kentucky, Appellee.

UNITED STATES of America,
Appellant,

v.

FIRST NATIONAL BANK OF PRES-
TONSBURG, Kentucky, Ada Griffith
(Now Schwanka), Priscilla G. Ring, Rob-
ert H. Griffith, Jr., Donald P. Ring, Jac-
quette Griffith, and Shoppers Faire,
Inc., Appellees.

Court of Appeals of Kentucky.

Jan. 12, 1979.*

---

* The decision of the panel was made prior to Jan. 1, 1979, but the opinion was not rendered until this date.

James A. Combs, Prestonsburg, for Borg-Warner Corp.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Crombie J. D. Garrett, Phillip I. Brennan, Attys., Tax Div., Dept. of Justice, Washington, D. C., for United States.

Richard E. Fitzpatrick, Tarrant, Combs & Bullitt, Lexington, for First National Bank of Prestonsburg.

Before HAYES, HOWARD and PARK, JJ.

HAYES, Judge.

This appeal arises from a finding in the Floyd Circuit Court favorable to the plaintiff bank and unfavorable to the United States and the Borg-Warner Corporation.

It presents rather complex questions of interpretation of the Federal Tax Lien Statute, of the Kentucky law on the effect of unrecorded mortgages against third parties, and of the time at which an equitable mortgage will be deemed to have been created.

On October 25, 1973, Shoppers Faire, Inc. executed and delivered to the First National Bank a promissory note in the amount of $53,500.00. On the same day, a purported mortgage for certain real property was executed by Robert and Ada Griffith, delivered to the bank, and duly filed for record. The mortgage was to serve as security for the note. The instrument was defective in that the land purported to be mortgaged was held in fee simple by Shoppers Faire, a corporation in which Robert and Ada Griffith were major shareholders, rather than by Robert and Ada Griffith. Thus the legal interest they attempted to create was void. However, because value had been given and received, the trial court would eventually find that an equitable mortgage existed between the parties to the void instrument.

When the parties to the mortgage agreement defaulted on the payments due, the bank attempted to execute on the property which the circuit court eventually found to be subject to an equitable mortgage. The other two parties at the appellate stage, the United States and the Borg-Warner Corporation, became lienholders as a result of filing, respectively, two federal tax liens and lis pendens notice of execution between the time of attempted creation of a legal mortgage and the eventual court proceeding which determined the existence of an equitable mortgage.

The lis pendens notice was filed by Borg-Warner on May 7, 1974, i. e., between the two federal tax liens, filed respectively, April 18 and July 17, 1974.

## I. INTERVENING PLAINTIFF–APPELLANT UNITED STATES OF AMERICA

The threshold issue is whether the equitable mortgage is, for the purposes of 26 U.S.C. § 6323, a section of the Federal Tax Lien Act, a "security interest" protected by state law,[1] which might compete with federal tax liens filed April 18 and July 17, 1974.

▇ The Floyd Circuit Court created the equitable mortgage, binding as between the parties to it, through its equitable powers. The first issue appears to be whether the court's creation of the equitable mortgage relates back to the execution of the void legal mortgage, for purposes of determining its possible existence as a security interest protected by state law, or whether it came into existence only on the date judgment was rendered.

If the creation of the equitable mortgage relates back to October 25, 1973, the interest involved might arguably be considered a security interest protected under state law as per the Tax Lien Act. However, in the absence of known authorities on the point, it seems to this Court totally irrational to relate the equitable interest back to the date of its attempted legal inception *with regard to third parties.*

Even if relation back were found to exist by this Court, the result *as* to the United States would not change. If relation back does occur, it is necessary to look to Kentucky law to see whether the security interest as against a federal tax lien was protected under the circumstances at bar. At the risk of indulging in dictum, we will clarify what this Court's posture toward the position of the federal government would have been if it had found the bank to have an existing security interest at the times the federal tax liens were filed.

According to the judgment of the lower court, the equitable mortgage between the bank and Shoppers Faire has, as against third parties the same effect as an unrecorded mortgage.

The United States argues that no security interest is created without proper recordation. Even the Uniform Commercial Code, which the United States cites to support this proposition, recognizes that a security interest may be *created* without recordation; § 9–204 on attachment of security interests makes agreement that the interest attach, plus the giving of value when the debtor has rights in the collateral, sufficient. It is perfection, not creation, which in most cases requires recordation. The same general policy is expressed by KRS 382.270 and the case law flowing from it, discussed *infra.*

---

1. The Federal Tax Lien Act, Internal Revenue Code of 1954, Subchapter C, (1970), provides, in pertinent part:

   26 U.S.C. § 6321. Lien for taxes
   If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

   . . . . .

   26 U.S.C. § 6323. Validity and priority against certain persons
   (a) Purchasers, holders of security interests, mechanic's lienors, and judgment lien creditor.—The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.

   . . . . .

   (h) Definitions.—For purposes of this section and section 6324—
   (1) Security interest.—The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

■ The effect of an unrecorded mortgage, otherwise valid, is described in KRS 382.270, which says that no unrecorded mortgage "shall be valid against a purchaser for a valuable consideration, *without notice thereof,* or against creditors . . . .." (Emphasis added). The language of the statute appears to impose the lack of knowledge requirement on purchasers, but not on creditors. However, Kentucky courts have consistently held that the no-knowledge requirement does indeed apply to creditors, since "the creditor stands on the same footing as the purchaser." *Sears v. Cain,* 242 Ky. 702, 47 S.W.2d 513 (1932). Since the statutory language has been repeatedly re-enacted by the General Assembly with that judicial interpretation, it must be considered to have been incorporated into the statute. Thus, under Kentucky law alone, actual knowledge on the part of the federal government would be fatal to its priority. If, however, federal law is *contra,* it must prevail.

■ There are two trends of judicial thought as to whether notice or knowledge on the part of the government can impair any priority which the government would otherwise have under 26 U.S.C. § 6323.

The cases referred to below involve interests in personalty; thus in those cases Article IX of the Uniform Commercial Code is the applicable state law. The policies embodied in KRS 382.270 are sufficiently similar that for purposes of this discussion they may be treated interchangeably with the applicable Article IX provision, § 9–301(1)(b), which gives priority over an unperfected security interest to "a person who becomes a lien creditor without knowledge of the security interest and before it is perfected."

One sequence of cases puts the federal government in the shoes of an ordinary lien creditor and then applies the Code to determine priorities. In those cases, when the government obtains actual knowledge of an unperfected security interest before filing the tax lien (as it apparently had in the instant case) its lien is subordinated to the prior interest. *United States v. Hunt,* 513 F.2d 129 (10th Cir. 1975); *United States v. Ed Lusk Const. Co.,* 504 F.2d 328 (10th Cir. 1974); *United States v. Trigg,* 465 F.2d 1264 (8th Cir. 1972), cert. denied 410 U.S. 911, 93 S.Ct. 973, 35 L.Ed.2d 274 (1973).

The other approach, rather than viewing the government as a lien creditor, examines the position of a hypothetical creditor holding an interest *equivalent to* that held by the government. *United States v. Sterling Nat'l Bank & Trust Co.,* 360 F.Supp. 917 (S.D.N.Y.1973), modified on other grounds, 494 F.2d 919 (2nd Cir. 1974); *Fred Kraus & Sons v. United States,* 369 F.2d 1089 (N.D. Ind.1974), affirmed, 506 F.2d 1404 (7th Cir. 1974); and *Dragstrem v. Obermeyer,* 549 F.2d 20 (7th Cir. 1977). Under this approach, any knowledge actually in the possession of the government is not imputed to the hypothetical lien creditor, so the question of knowledge becomes immaterial.

We believe that while both approaches have some merit, the latter is the more logical extension of the Tax Lien Act, which itself is silent as to notice.

In reaching this conclusion, we adopt the reasoning of Judge Eschbach in *Dragstrem v. Obermeyer,* Civ. No. 72 F 20, at 8 (N.D. Ind.1975) (Memorandum of Decision and Judgment Order), previously adopted by the Seventh Circuit of the United States Court of Appeals in *Dragstrem v. Obermeyer,* 549 F.2d 20 (1977) at 26:

> This conclusion is supported by an analysis of the Legislative policy underlying the enactment of the Federal Tax Lien Act of 1966, the present version of 26 U.S.C.A. § 6323. The legislative history, S.Rep.1708, U.S.Code Cong. & Admin. News, 89th Cong., 2d Sess. p. 3722 (1966), makes it clear that the purpose was to bring federal tax lien law into conformity with the concepts of the Uniform Commercial Code, and thereby to permit more certainty and stability in business affairs for secured creditors. The specific legislative intent was to enable creditors to protect certain types of security interests against subsequent federal tax liens, and to do so by taking the same steps already necessary under state law to protect their

interests against various other types of competing claims. This legislative policy would in no way be enhanced by a holding that a properly filed federal tax lien does not have priority over an unperfected security interest simply because the Government has knowledge of the security interest before the tax lien is filed. Conversely, whatever the policy of the Uniform Commercial Code in making an exception as to priority when a lien creditor has knowledge of an unperfected security interest, *this cannot apply to a tax lien situation as the government does not rely on any notice, actual or record, in making a determination to become a creditor, or to create and file a tax lien.* The rationale of the new, Section 6323(a), federal priority rule centers on not disrupting the stability of business relationships where that stability exists under state law, and not on the irrelevant fact of the existence or not of any kind of notice to the government of outstanding security interests. Indeed, one of the effects of the 1966 Act was to finally rebut the frequent secured party argument, the opposite of that made by the secured parties in the present case, that a failure to file and hence perfect a security interest under the Uniform Commercial Code ought not to subordinate the security interest to the federal lien since the government does not in any event rely on the records in becoming a creditor. (Emphasis added).

 For this reason we reverse the ruling of the trial court as to the intervening plaintiff-appellant, the United States, and find that its liens are prior to the equitable mortgage held by the First National Bank of Prestonsburg.

## II. INTERVENING PLAINTIFF–APPELLANT BORG–WARNER CORPORATION

 The First National Bank of Prestonsburg argues that Borg-Warner loses any priority it would otherwise have because it was a creditor with knowledge under KRS 382.270 and cases decided under

that statute (or prior statutes using identical language) holding that the no-knowledge requirement is imposed on creditors. The factual basis of this argument is the alleged actual knowledge conveyed to Borg-Warner when the president of the bank told an officer of Borg-Warner that he intended to take a mortgage on the real estate.

The question of actual knowledge is, however, immaterial in light of our determination that the creation of the equitable mortgage, correctly created by the trial court, does not relate back to the date of the attempted legal mortgage.

The creation of an equitable mortgage between the parties to the attempted legal mortgage because of value given and received was an appropriate device for the prevention of manifest injustice as between those parties. There is, however, no sound reason for allowing such an equitable conveyance to prejudice the rights of strangers to the attempted mortgage.

The conclusion that the bank had no security interest in the land until such interest was decreed by the Floyd Circuit Court calls for some modification of that court's assertion that the equitable mortgage has the same effect as an unrecorded mortgage. It may indeed have such an effect, but only from such time as it has *come into existence.*

 We find that Federal Tax Lien No. 1196, filed April 18, 1974, is prior to the Lis Pendens Notice of Execution filed by Borg-Warner on May 7, 1974, and that Borg-Warner's interest is in turn prior to Federal Tax Lien No. 1201, filed July 17, 1974. All of those interests are prior to the equitable mortgage held by the First National Bank of Prestonsburg.

We reverse the judgment of the Floyd Circuit Court and remand for disposition in accordance with our findings.

All concur.