Mark MINIX, Appellant,

v.

J.C. MAGGARD, Individually and J.C. Maggard, Executor of the Estate of Sylvia Maggard, and Rachel Musgrave, Appellees.

Court of Appeals of Kentucky.

March 25, 1983.

Discretionary Review Denied
June 29, 1983.

Kenneth Williams, Jr., Ashland, for appellant.

John David Preston, Painstville, Frank G. Gilliam, Lexington, for appellees.

Before GUDGEL, McDONALD and MILLER, JJ.

MILLER, Judge.

This case involves a controversy between appellant, Mark Minix, (referred to as "Mi-

nix"), a purchaser of real property at a Federal Tax sale, and appellee, J.C. Maggard, individually and as Executor of the Estate of Sylvia Maggard, (referred to as "Maggard"), the owner of an *unrecorded purchase money mortgage, covering the real property,* also, co-appellee, Rachel Musgrave, an interim owner of the real property in question. The controversy primarily lies between Minix and Maggard and surrounds the question of whether a deed to real property given by the United States District Director of the Internal Revenue (IRS), pursuant to a Federal Tax sale, "cuts off" or discharges an unrecorded purchase money mortgage. The trial court held that the IRS deed to Minix did not discharge the unrecorded purchase money mortgage of Maggard. Minix appeals. We affirm the decision of the trial court.

This matter presents a complex set of facts; and an even more complex question of law involving the Federal Tax Lien Act[1] and its impact on the Kentucky law, relative to an unrecorded purchase money mortgage.

We set forth what we believe to be relevant facts.

1. On *November 2, 1972,* Maggard sold a house and lot to Dr. Ernest E. Musgrave and his then wife, Rachel Musgrave. A purchase money (vendor's) lien was retained, and set out in the deed of conveyance, securing a substantial unpaid portion of the purchase price. *This deed was not recorded at any relevant time herein.*

2. On *August 27, 1973,* the IRS properly recorded a "Notice of Federal Tax Lien under Internal Revenue Laws" against Dr. Ernest E. Musgrave and Rachel Musgrave.

3. On *November 7, 1975,* Dr. Ernest E. Musgrave (and his second wife, Linda Lue) deeded subject property to Rachel Musgrave (then his former wife) pursuant to a divorce settlement. Maggard joined in this deed to release Dr. Ernest E. Musgrave from his obligation under the purchase money mortgage in the *unrecorded deed of*

---

1. Relevant portions of the Federal Tax Lien Act of 1966 [Internal Revenue Code 1954] are as follows:

26 U.S.C. § 6321. LIENS FOR TAXES

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6323. VALIDITY AND PRIORITY AGAINST CERTAIN PERSONS.

(a) Purchases (Purchasers), holders of security interests, mechanic's lienors, and judgment lien creditors. The lien imposed by section 6321 shall not be valid as against any purchaser, *holder of a security interest,* mechanic's lienor, or judgment lien creditor until notice thereof . . . has been filed by the Secretary. (Emphasis added).

(h) *Definitions.* For purposes of this section and section 6324—

(1) *Security interest.* The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of any obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and *the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation,* and (B) to the extent that, at such time, the holder has parted with money or money's worth. (Emphasis added).

26 U.S.C. § 6339. LEGAL EFFECT OF CERTIFICATE OF SALE OF PERSONAL PROPERTY AND DEED OF REAL PROPERTY.

(b) *Deed of Real Property.* In the case of the sale of real property pursuant to section 6335—

(1) *Deed of evidence.* The deed of sale given pursuant to section 6338 shall be prima facie evidence of the facts therein stated; and

(2) *Deed of conveyance of title.* If the proceedings of the Secretary as set forth have been substantially in accordance with the provisions of law, such deed shall be considered and operate as a conveyance of *all the right, title and interest the party delinquent* had in and to the real property thus sold at the time the lien of the United States attached thereto. (Emphasis added).

(c) Effect of junior encumbrances. A certificate of sale or personal property given or a deed to real property executed pursuant to section 6338 shall discharge such property from *all liens, encumbrances, and titles over which the lien of the United States with respect to which the levy* was made had priority. (Emphasis added).

November 2, 1972, and to hold only Rachel Musgrave responsible for the purchase money mortgage indebtedness. The terms of the purchase money mortgage in the November 2, 1972, deed were "incorporated by reference." Rachel Musgrave signed the deed. On August 25, 1976, this deed was recorded.

4. On *May 4, 1981,* after proper notice, the IRS conducted a sale of subject property to satisfy its tax lien against Dr. Ernest E. Musgrave and Rachel Musgrave, of August 27, 1973.

5. Minix was the purchaser at the tax sale on May 4, 1981. He was on "actual notice" of the Maggard purchase money lien. He received oral notice from the IRS agent, Stephen Sharpless, and written notice through "Notice of Encumbrances Against Property Offered for Sale" posted at the sale. Further, he had "inquiry notice" by personally examining the November 7, 1975, deed which was then of record. (Minix alibis that the IRS agent Sharpless advised him that the tax deed would give him clear title of the Maggard's lien. Whether or not this is true is of little consequence since the fact is that by discussing the lien with the agent, Minix reveals that he was well aware of its existence).

6. On *May 4, 1981,* as the high bidder and purchaser, Minix was issued by the IRS a "Certificate of Sale of Seized Property."

7. On *September 21, 1981,* Maggard's deed of November 2, 1972, containing the purchase money lien was recorded.

8. On *October 21, 1981,* Maggard filed suit against Minix to subject property to sale and satisfaction of his purchase money lien.

9. On *October 28, 1981,* after the passage of the redemptive time, the IRS, through its District Director, signed and delivered a deed to Minix.

■ There are equities abundant on both sides of this issue. Maggard argues that his purchase money lien is viable and enforceable because not only the government but the tax sale purchaser, Minix, was well aware of its existence. He points to the fact that a mortgage lien need not be recorded to be valid and enforceable. *See Robertson v. Sebastian,* Ky., 99 S.W. 933 (1907). He further points out the failure to record under our recording statute is not fatal as against one having "actual notice." KRS 382.270. *Flowers v. Mooreman & Hill,* Ky., 86 S.W. 545 (1905); *Cox v. Guaranty Bank & Trust Co.,* 199 Ky. 115, 250 S.W. 804 (1923); *Turner v. McIntosh,* Ky., 379 S.W.2d 470 (1964). This rule is also applicable to a purchaser at a judicial sale. *Perry v. Trimble,* Ky., 76 S.W. 343 (1903). In essence, Maggard points out that not only were all parties concerned aware of his unrecorded purchase money lien but that in fact, the tax sale was conducted with cognizance of his lien and in due regard for same in that the government furnished to the prospective bidders, including Minix, a "Notice of Encumbrances Against Property Offered for Sale." This notice listed the Maggard lien. Minix admitted examining the relevant records in the office of the Johnson County Court Clerk and finding the November 7, 1975, deed between Dr. Ernest E. Musgrave and his former wife, Rachel Musgrave, and Maggard wherein the agreement in the unrecorded deed of November 2, 1972, was incorporated by reference. This 1975 deed recognized an obligation from the Musgraves to Maggard and Maggard agreed to release Dr. Ernest E. Musgrave and hold only Rachel Musgrave responsible.

■ On the other hand, Minix maintains that as a purchaser at the Federal Tax sale he is entitled to the benefit of section 6339(c) of the Federal Tax Lien Act which provides that his deed from the District Director (IRS) discharges the property from the Maggard lien, it being a lien over which the Federal Tax lien had priority. In short, he maintains that his Federal Tax sale deed "cleansed" his title, thereby erasing the Maggard lien. Under Kentucky law, we would need to go no further for even a purchaser at a judicial sale would not obtain good title if he were on actual notice of an unrecorded instrument. *Perry, supra.* But here we have a Federal Tax sale, and the Federal law is controlling as to priority

of competing liens, while state law is deferred to in determining the extent of a taxpayer's property rights to which the tax liens can attach. *See Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960), and *United States v. Brosnan,* 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960).

The problem in the case at hand is whether the tax lien filed on August 27, 1973, attached to the delinquent taxpayers' (Musgraves) property to the exclusion of the unrecorded purchase money lien held by Maggard. Ordinarily a Federal Tax lien arises automatically at the time of the delinquency assessment and binds the estate of the delinquent taxpayer. 26 U.S.C. § 6321. However, section 6323 gives certain claims against the taxpayer's estate priority, if they arose before the filing of the tax lien. This section of the Code provides that "the lien imposed by section 6321 shall *not* be valid as against any purchaser, *holder of a security interest* ... or judgment lien creditor until notice" has been filed. Neither mortgages, purchase money mortgages nor mortgage liens are addressed by the Code. Rather, they are included in the term "security interest."

The question now becomes whether the unrecorded Maggard purchase money mortgage (November 2, 1972) was a "security interest" in existence at the time the Federal Tax lien was filed on August 27, 1973. If it was, it was, indeed, superior to the tax lien and not discharged by the section 6339(c) tax deed given to Minix on October 28, 1981. Section 6323(h) defines security interest as an interest in existing property which state law protects from a judgment creditor's execution arising from an unsecured obligation. Under Kentucky law, the Maggard lien was protected from any subsequent creditor with notice.

■ We hold Maggard's purchase money lien to have been a "state protected security interest" over which the Federal Tax lien had no priority. This is because of the special exception in section 6323(a), as defined in section 6323(h). We find no cases considering this precise issue, but

some tangential authorities merit discussion. Our court in *Borg-Warner Acceptance Corporation v. First National Bank of Prestonsburg,* Ky., 577 S.W.2d 29 (1979), held that a Federal Tax lien, in a competing lien controversy, was superior to an "attempted creation" of a legal mortgage. The tax liens were filed after the attempted creation of the legal mortgage but before a court of equity could establish a valid lien. Although, citing two lines of Federal authority on the matter, both with merit, the court chose to follow the line holding that knowledge of a prior equity does not impair the government's standing. The reasoning behind this view is that the government neither selects its debtor or has any choice as to when it will become a creditor; therefore, notice to the government should be of no consideration. This rule is contrary to the basic Kentucky law announced in KRS 382.270, wherein notice is incorporated in the recording statute. Our statute is not a matter of "pure race" to recordation but rather "race-notice." It is not the first to record, but the first to record without notice, that achieves superiority.

■ However, the decision of *Borg-Warner,* applying Federal law and that line of Federal authority holding that notice has no effect upon the government, has many differences from the case *sub-judice.* (Here we observe, the question of lien priority as historically one of equitable consideration). In *Borg-Warner,* the security interest sought to be protected from the tax lien was not yet created at the time of filing the tax lien. Further, there was no subsequent purchaser involved whose rights had to be weighed against a lienholder. Finally, in our case, Minix purchased the property, and the government sold same, with all parties knowing of the Maggard lien; which lien was valid under Kentucky law, against anyone taking with notice. It can be assumed that the "Notice of Encumbrances Against Property Offered for Sale," furnished to the prospective bidders caused all bidders, including Minix, to cast their bids accordingly. The notice not only informed prospective buyers of the lien's existence but

also the identity of the lienholder and the amount of the lien. Assuming the bids were made with the lien in mind, Minix would now reap a "windfall" if he could avail himself of the tax deed cleansing, thereby voiding the Maggard lien. We find that the equities involved in this case far exceed those involved in *Borg-Warner, supra.*

*Capital Savings Association v. Runnels,* 361 So.2d 458 (La.App., 1978), is distinguishable. There the government was the high bidder and took title. Like the line of cases buttressing *Borg-Warner, supra,* the government's position was apparently not affected by notice under state law. In our case, we have Minix, a tax sale purchaser who, under state law, could indeed be affected by notice. His notice subordinated him to the Maggard lien.

Finally, there is a reasonable basis for concluding that the tax deed intended to convey only the interest of the delinquent. Section 6339(b)(2). Indeed, it is presumed that the government did not desire to seize and sell that which the taxpayer did not own. Purchase money liens are extraordinary, they arise when the vendor parts with legal title but retains a security interest. Although we find no case discussing this point, we believe that section 6323(a)(h) defining state protected interests was designed to protect precisely this type of lien. Section 6321 creates a lien only upon property of the delinquent taxpayer. It would be somewhat incongruous to hold that a tax deed under section 6339 could effectively "expand" the levy and convey away property of the taxpayer which was neither owned by the latter nor subjected to levy.

We note that under an Internal Revenue Ruling (Rev.Rul. 68–57, 1968–1 C.B. 553), the government takes the position that although purchase money mortgages are not specifically referred to under the law, it is generally held that these interests are protected "whenever they arise." This consideration is based upon the fact that the taxpayer has acquired property "only to the extent that the value of the whole property ... exceeds the amount of the purchase money mortgage."

The appellant Minix raises the question of subrogation. He desires to, by subrogation, be placed in the "shoes" of Maggard and thereby assert a claim against Rachel Musgrave. Subrogation is an equitable remedy. Equity does not support the contention of Minix. He was a purchaser at the tax sale, with knowledge of the Maggard lien, and obviously bid accordingly. He purchased the property, well knowing of the Maggard lien and the amount thereof. That his tax deed has not cleansed his property of the Maggard lien is of no consequence. To permit him, by subrogation, to slip into the shoes of Maggard would place him in a position permitting "double" recovery or at least "unjust enrichment." Further, since he purchased all of the interest of Rachel Musgrave at the tax sale, he is effectively standing in her shoes. To permit him to succeed to the position of Maggard, would, it seems to us, be putting him in a position of claiming against himself. Equity does not necessarily rest upon any theory of law but upon natural justice. Equitable principles will not be invoked so as to accomplish an inequitable result.

For the foregoing reasons, we affirm the decision of the trial court.

All concur.