**CONSOLIDATED ALUMINUM CORPORATION, Appellant,**

v.

**Robert L. KRIEGER, d/b/a Building Materials Manufacturing Company, Appellee.**

Court of Appeals of Kentucky.

April 25, 1986.

Discretionary Review Denied and Opinion Ordered Published by Supreme Court June 24, 1986.

Robert M. Brooks, Boehl, Stopher, Graves & Deindoerfer, Louisville, for appellant.

Richard J. Frockt, C. David Johnstone, Louisville, for appellee.

Before COMBS, LESTER and REYNOLDS, JJ.

COMBS, Judge.

This is an appeal from a judgment of the Jefferson Circuit Court, awarding appellee cover damages, consequential damages and lost profits for appellant's breach of contract.

Appellant Consolidated Aluminum Corporation (Conalco) is a fully integrated producer of aluminum products. Appellee Robert L. Krieger is the President of Building Materials Manufacturing Company. Krieger's company purchases bulk aluminum products from a supplier such as Conalco, manufactures a full line of weatherstripping materials, and resells the finished products to various wholesalers. Although aluminum is a commodity which is subject to some fluctuation in price, the wholesalers give their retailers a firm price on weatherstripping products as a general business practice. For this reason, Krieger's company gives its customers the same firm pricing, and seeks guaranteed pricing from its suppliers.

In January of 1977, a Conalco salesman contacted Krieger at his Louisville office in an effort to sell Krieger aluminum extrusions. At that time, Krieger was purchasing his aluminum through other sources. However, Conalco had a plant in Carrollton, Kentucky, and Krieger was intrigued at the possibility of obtaining extrusions from a local supplier. Krieger gave Conalco's agent a description of the extrusions he required, and the salesman relayed that information to the Carrollton plant manager. After reviewing Krieger's specifications, Conalco informed Krieger that the Carrollton plant could run the extrusions.

In January of 1977, Conalco sent Krieger blueprints for the production of seven different extrusions items, with accompanying price quotations. At that point, Krieger informed Conalco that he was currently purchasing aluminum extrusions from Conalco's competitors at firm prices, and that Conalco would have to beat those prices in order to secure Krieger's business. Krieger also told Conalco that there were time restrictions involved because he was purchasing the aluminum extrusions to manufacture weatherstripping materials, a seasonal product. Following laborious negotiations, the parties agreed on pricing terms.

In March of 1977, Krieger sent Conalco two purchase orders reflecting the agreed prices. Conalco acknowledged Krieger's purchase order, but quoted prices for two items that were higher than the agreed prices. In addition, the acknowledgment contained two unnegotiated terms, "priced to meet competition." When Krieger received the acknowledgement, he contacted Conalco. The parties renegotiated the order's price and Conalco assured Krieger that the other inconsistencies were caused by computer error. Conalco also informed Krieger that his order had been transferred from the Carrollton plant to Conalco's Murphysboro, Illinois, plant.

Krieger received a new acknowledgment from Conalco stating that the order would be produced at the Murphysboro plant. Although the new acknowledgment contained the same two contradictory terms, "price in effect at time of shipment to apply," and "priced to meet competition," Conalco reit-

erated that the inconsistencies were due to a computer error.

In June of 1977, the sales manager of Conalco's Murphysboro plant informed Krieger that Conalco would not produce his order unless' Krieger agreed to a twenty percent price increase. During the next few weeks, Krieger and Conalco exchanged a heated series of correspondence culminating in Conalco's effective breach of the contract on July 7, 1977. Conalco's refusing to produce his order forced Krieger to purchase aluminum extrusions from two other suppliers at inflated prices, incurring cover damages. In addition, Conalco's breach disrupted Krieger's production schedule and forced his company to work its employees overtime in order to meet manufacturing deadlines. Finally, at least one of Krieger's customers lost confidence in Krieger's ability to supply its needs in a timely fashion, and diverted a healthy percentage of Krieger's business to other sources.

Krieger brought this action against Conalco for cover damages, consequential damages and lost profits. After reviewing the entire record, the lower court held that an enforceable contract existed between Krieger and Conalco. The Court awarded Krieger $22,391.03 cover damages, $13,325.52 consequential damages for overtime wages, and $97,789.42 consequential damages for lost profits.

■ On appeal, Conalco first contends the lower court erred in "inferring a contract" between the parties, because the parties never agreed on the pricing term. Krieger and Conalco contracted for the sale of goods, which is governed by Article II of the Uniform Commercial Code. Under the Uniform Commercial Code, parties may form an enforceable contract even if they fail to agree on one or more terms, such as the pricing terms. KRS 355.2–204 deals with the formation of a contract in general. Subsection 3 of that section states that: "[e]ven though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."

In this case, Conalco agreed to sell Krieger a given number of aluminum extrusions at a given price to be delivered by a given date. The parties reached this agreement after many weeks of negotiations. Conalco prepared blueprints for Krieger's inspection and constructed sample parts at great expense for Krieger's approval. In our opinion, the parties intended to enter into a binding agreement for the sale of the extrusions.

Furthermore, KRS 355.2–207 dealing with additional terms in acceptance or confirmation is tailor-made for the problem now facing this Court. That section reads, in part, as follows:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance *even though it states terms additional to or different from those offered or agreed upon,* unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) *The additional terms are to be construed as proposals for addition to the contract.* Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received. [Emphasis added.]

Conalco's term "price in effect at time of shipment to apply" appearing on its acknowledgment constitutes "terms additional to or different from those offered or agreed upon." KRS 355.2–207(1). Although such a term ordinarily becomes part of a contract between merchants as a matter of course, Krieger's timely objec-

tion to the terms excluded them from Krieger-Conalco contract.

■ We also note that the commentary to KRS 355.2–207 states "any additional matter contained in the confirmation or in the acceptance falls within subsection (2) *and must be regarded as a proposal for an added term unless the acceptance is made conditional on the acceptance of the additional or different terms.*" [Emphasis added.] Conalco's acknowledgment did not condition the contract on Krieger's accepting the additional proposed terms, so the parties formed a contract according to the common terms in Krieger's purchase order and Conalco's acknowledgment. At that point, Krieger and Conalco were free to renegotiate the addition of the term "price in effect at time of shipment to apply." That subsequent dispute in no way affects the validity of the underlying contract.

■ Conalco next argues that the lower court erred in granting Krieger cover damages because Krieger could have mitigated his damages by passing on the price increase to his own customers. Conalco's position is not the law of this Commonwealth. Kentucky's Uniform Commercial Code grants an aggrieved buyer a choice of several different remedies for the seller's breach of contract. KRS 355.2–712 states "the buyer may 'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller." Under that section, the buyer's damages include "the difference between the cost of cover and the contract price together with any incidental or consequential damages."

Nothing in that section or any other part of the Code requires the innocent nonbreaching buyer and its customers to absorb the cost of the seller's breach of contract. The only restriction on the buyer's right to invoke the cover remedy requires it to make a reasonable purchase of substitute goods "in good faith and without unreasonable delay." KRS 355.2–712(1).

In this case, Krieger did not engage in unreasonable delay before covering his damages, and the record contains no evidence of bad faith on his part. Therefore, we hold that Krieger was entitled to cover damages under KRS 355.2–712. Moreover, the amount of the award is not clearly erroneous based on the evidence of record and will not be disturbed by this court. CR 52.01.

■ Finally, Conalco alleges the lower court erred in granting Krieger consequential damages because Conalco's acknowledgment form contained an express exclusion of consequential damages. Conalco relies on the following language, which appears in fine print on the reverse side of its acknowledgment forms:

22. Damages. Under no circumstances shall the seller be liable for any consequential, contingent, incidental or special damages, nor shall any liquidated damages or penalty clause be binding upon the seller.

Under the Uniform Commercial Code, the negotiated terms in Conalco's acknowledgment form stand as the contract between the parties. KRS 355.2–207. However, the twenty-two "terms and conditions of sale" appear on the reverse side of Conalco's acknowledgment form below the signature line. Furthermore, the language on the face of the contract incorporating those terms and conditions by reference also appears below the signature line.

■ In Kentucky, a writing "shall not be deemed to be signed unless the signature is subscribed at the end or close of the writing." KRS 446.060(1). Kentucky courts consistently hold that the Uniform Commercial Code did not displace KRS 446.-060(1). Under Kentucky law that section supplements the Code's provisions. KRS 355.1–103. *See R.C. Durr Company, Inc. v. Bennett Industries, Inc.,* Ky.App., 590 S.W.2d 338 (1979). Therefore, any part of a commercial writing appearing below the signature line does not become part of the contract. *Id.* at 340.

In *Bartelt Aviation v. Dry Lake Coal Co.*, Ky.App., 682 S.W.2d 796, 797 (1985), the court discussed the rationale behind the rule:

> When the signature is in the middle of a writing, it gives no assurance that the contracting parties intend to be bound by matters which do not appear above their signatures; however, when a signature is placed after clear language has expressed the incorporation of other terms and conditions by reference, it is a logical inference that the signer agrees to be bound by everything incorporated. [Citations omitted.]

We do not mean to suggest that KRS 446.060(1) abolishes incorporation of terms and conditions by reference in commercial contracts. That is clearly not the case. *See Childers & Venters, Inc. v. Sowards*, Ky., 460 S.W.2d 343 (1970). *See also Hertz Commercial Leasing Corp. v. Joseph*, Ky. App., 641 S.W.2d 753 (1982). However, any incorporating language must appear above the signature line of the contract in order to be valid and enforceable in the courts. *R.C. Durr Company, Inc. v. Bennett Industries, Inc.*, 590 S.W.2d at 338; *Hertz Commercial Leasing Corp. v. Joseph*, 641 S.W.2d at 753; *Bartelt Aviation v. Dry Lake Coal Company*, 682 S.W.2d at 796.

We hold that the incorporating language placed below the signature line and the terms and conditions on the reverse side of the acknowledgment form were not part of the contract between Krieger and Conalco. Therefore, the lower court did not err in awarding Krieger consequential damages under KRS 355.2–712(2) and KRS 355.2–715. Furthermore, Conalco has not disputed the amount of the lower court's damage award, so we accept its computation as accurate.

The judgment of the Jefferson Circuit Court is affirmed.

All concur.