MIDDLETOWN ENGINEERING
COMPANY, Appellant,

v.

CLIMATE CONDITIONING
COMPANY, INC., Appellee.

MIDDLETOWN ENGINEERING
COMPANY, Appellant,

·v.

CLIMATE CONDITIONING COMPANY,
INC., and Carnes Company,
Inc., Appellees.

CLIMATE CONDITIONING COMPANY,
INC., Cross–Appellant,

v.

CARNES COMPANY, INC.,
Cross–Appellee.

Court of Appeals of Kentucky.

May 31, 1991.

As Modified May 31, 1991.

Richard C. Oldham, Jr., Louisville, for Middletown Engineering Co.

Brian E. Clare, Louisville, for Climate Conditioning Co., Inc.

Robert G. Breetz, Kelly Mark Easton, Stites and Harbison, Louisville, for Carnes Co., Inc.

Before LESTER, C.J., and STUMBO and WILHOIT, JJ.

WILHOIT, Judge.

These are appeals from a summary judgment by the Jefferson Circuit Court in a breach of warranty action. The appellant Middletown Engineering Company was a subcontractor for Whittenberg Engineering & Construction Company on a construction project involving an addition to the Veteran's Administration Medical Center in Louisville, Kentucky. Middletown purchased a quantity of variable air volume boxes which were installed in the Medical Center as part of its heating, ventilating, and air conditioning system. The "VAV" boxes were manufactured by the appellee Carnes Company, Inc., and sold to the appellant through the independent business of the appellee Climate Conditioning Company, Inc.

In response to Middletown's purchase orders for the VAV boxes, Carnes sent acknowledgements and invoices for the boxes and other goods. On the reverse side of each acknowledgement was printed Carnes's "Terms, Conditions and Warranty" of the sale. The first clause of the terms and conditions reads as follows:

This writing constitutes the complete and exclusive statement of the terms and conditions of sale of the products and/or services described herein, and Seller's obligation to sell is expressly conditioned upon assent to these terms and conditions. Buyer will be deemed to have assented to these terms and conditions unless Seller receives written notice of any objection within 5 days of the date Buyer receives this writing.

Also included in the terms and conditions were clauses containing a general disclaimer of warranties and a limitation of remedies. The remedy limitation provided that "Seller's obligation and Buyer's exclusive remedy [for defective products] shall be limited to . . . repair and replacement . . . at Seller's option." This limitation was followed by a general disclaimer of all other express or implied warranties, including merchantability and fitness for a particular purpose. Another clause stated "SELLER SHALL NOT BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL OR CONTINGENT DAMAGES WHATSOEVER."

After installation it was found that the VAV boxes would not hold calibration at low air speeds. As a result the Veterans Administration rejected the heating and air conditioning system after a final project inspection in January 1988. Carnes was able to repair the boxes after 126 days had elapsed. Because of the extended overhead costs caused by the delay, Whittenberg assessed Middletown with delay damages totalling $42,449.40. Additional reinspection costs amounted to $2,447.14, and Middletown has alleged total damages of $67,453.00.

Middletown filed suit against Carnes and Climate to recover consequential damages due to the alleged breach of warranty. Climate counterclaimed against Middletown for payment for materials and cross-claimed against Carnes for indemnity. The trial court entered a summary judgment for Carnes against both Middletown and Climate. Middletown and Climate now appeal.

Middletown first argues that the terms and conditions on Carnes' acknowledgement forms were never a part of the contract between the parties because Middletown did not sign the forms at the end. In support of this position, it cites *Aluminum Corporation v. Krieger*, Ky.App., 710 S.W.2d 869 (1986). That case is distinguishable first of all in that the seller there did not condition the sale on acceptance of the additional terms contained in its acknowledgement. In *Krieger*, unlike this

case, there had been extensive negotiation of the terms of sale. Also, the acknowledgment form apparently was signed by the buyer at a place above that portion of the form which stated that additional terms appearing on the back of the form were incorporated into the terms. Whereas the acknowledgment form here neither had a place for a signature nor was it signed by the buyer. Middletown's signature was not necessary to the formation of a contract. *See* KRS 355.2–204.

■ Middletown argues next that both the limitation of remedy and of damages constituted material alterations to its offer of purchase and thus did not become part of the contract between the parties by virtue of KRS 355.2–207(2)(b). Whether or not these limitations are considered as materially altering the offer, Carnes expressly conditioned its acceptance of the purchase offer on the purchaser's assent to the additional terms and conditions. Middletown did not notify Carnes of any objection to the terms and conditions until long after the goods were delivered and installed. Under these circumstances the additional terms became a part of the contract between the parties. *See Bickett v. W.R. Grace & Co.*, 12 U.C.C.Rep.Serv. 629 (W.D. Ky.1972); D. Leibson and R. Nowka, *The Uniform Commercial Code of Kentucky* § 23(A) (1983). *Cf. Roto–Lith Ltd. v. F.P. Bartlett & Co.*, 297 F.2d 497, 1 U.C.C.Rep. Serv. 73 (1st Cir.1962).

■ We likewise find no merit in Middletown's argument that Jerry Bascombe's letter to Climate constitutes an express warranty notwithstanding any disclaimers. Mr. Bascombe, a Carnes employee, wrote "I ... feel that our air distribution products meet or exceed the [project] requirements." This correspondence between representatives of Carnes and Climate cannot be taken as an express warranty to Middletown.

■ Finally, Middletown contends that the exclusive remedy limitation fails of its essential purpose, thereby permitting it to claim consequential and incidental damages caused by the alleged repair delay. KRS 355.2–719(2) provides that "where circumstances cause an exclusive or limited reme-

dy to fail of its essential purpose, remedy may be had as provided in this chapter." In *Ford Motor Company v. Mayes*, Ky. App., 575 S.W.2d 480 (1978), we approved the analysis made in *Beal v. General Motors Corporation*, 354 F.Supp. 423, 426 (D.Del.1973), in which the federal court stated:

The purpose of an exclusive remedy of replacement or repair of defective parts, whose presence constitute a breach of an express warranty, is to give the seller an opportunity to make the goods conforming while limiting the risks to which he is subject by excluding direct and consequential damages that might otherwise arise. From the point of view of the buyer the purpose of the exclusive remedy is to give him goods that conform to the contract within a reasonable time after a defective part is discovered.... The limited, exclusive remedy fails of its purpose and is thus avoided under § 2–719(2), whenever the warrantor fails to correct the defect within a reasonable period.

This is not a case in which the seller was unable or unwilling to make repairs. The VAV boxes were repaired and put in proper working order. Middletown argues, however, that because Carnes "took much too long, 126 days, with the corrections," and Middletown suffered consequential damages while repairs were made, the limited remedy of repair failed of its essential purpose. The fact that consequential damages were suffered by Middletown would not seem to have any direct bearing on whether the remedy of repair failed of its essential purpose since the very purpose of contract provisions such as we have here is to allocate between the buyer and the seller the risk in the event of consequential damages. If the seller were held responsible for these damages whenever they accrued during the period the contractual goods were being repaired, then this term of the contract between the parties would be rendered meaningless. The buyer would receive something it neither bargained nor paid for, while the seller would be required to pay for something it had contracted to avoid in spite of fully performing its agreements.

Because repairs were made and the buyer ultimately received goods which conformed to the parties' contract, the inquiry must be whether the repairs were made in a reasonable time after the defective condition was discovered. There is nothing in the record to suggest that the defective condition of the goods was latent even though the specific cause of the condition may not have been immediately apparent. The affidavit submitted by Carnes in support of its motion for summary judgment stated that "Carnes proceeded as quickly as possible to repair or replace the VAV boxes." Middletown points to no evidence of circumstances from which it is possible to infer either that the boxes should or even could have been repaired sooner or that the buyer had reason because of custom of the trade or otherwise to have expected a sooner repair. The fact that repair took 126 days in and of itself raises no inference one way or another as to whether the seller failed to correct the defect within a reasonable period. We cannot say the trial court erred in granting summary judgment. *See* CR 56.03.

Middletown also appears to assert that a genuine issue of fact exists as to whether Climate negligently selected an inappropriate size of VAV boxes. The complaint made no allegation of such negligence, and this issue may not be raised initially in the appellate court.

On the cross-appeal, Climate sought to preserve its indemnity claim against Carnes in the event that this matter was reversed. Since we affirm the decision of the circuit court and can otherwise find no basis for the independent liability of Climate, we need not address the cross-appeal.[1]

The decision of the Jefferson Circuit Court is affirmed.

All Concur.

---

**1.** Likewise, we need not address the fact that Carnes is not a proper cross-appellee. *See* CR 74.