STATE STREET BANK AND TRUST COMPANY OF BOSTON, MASSACHUSETTS; and James A. Quale, as Successor Trustee, Appellants,

v.

HECK'S, INC., a West Virginia Corporation; Heck's Properties, Inc., a West Virginia Corporation; HPI, Inc., a West Virginia Corporation; Hallwood Industries, Incorporated, a Delaware Corporation; Retail Acquisition Corp., a Delaware Corporation; Delta Natural Gas Company; Kentucky Utilities Company; the First National Bank and Trust Company of Corbin, Kentucky; John Bill Keck and wife, Gloria Keck; D.D. Roberts and wife, Edith Roberts; City of Williamsburg, Kentucky; and Whitley County, Kentucky, Appellees.

No. 96–SC–902–DG.

Supreme Court of Kentucky.

Feb. 19, 1998.

As Corrected March 19, 1998.

Rehearing Denied June 18, 1998.

Richard M. Hopgood, Kathryn Kendrick, Brown, Todd & Heyburn, Lexington, Darrell L. Saunders, Corbin, for Appellants State Street Bank and Trust Company of Boston, Massachusetts and James A. Quale.

Robert M. Watt, III, Stoll, Keenon & Park, for Appellee Delta Natural Gas Company.

Roger R. Cowden, Lexington, for Appellee Kentuckey Utilities Company.

Gary W. Brittain, Leick, Hammons, Brittain, Corbin, for Appellee First National Bank & Trust Company of Corbin, Kentucky.

Howard Oliver Mann, Trimble & Mann, Corbin, for Appellees John Bill Keck, Gloria Keck, D.D. Roberts and Edith Roberts.

Frank A. Atkins, Williamsburg, for Appellee City of Williamsburg, Kentucky.

K. David Kersey, Williamsburg, for Appellee Whitley County, Kentucky.

COOPER, Justice.

The primary issue raised in this litigation is whether a valid, recorded second mortgage, acquired with actual notice of the existence of a prior equitable mortgage, takes priority over the equitable mortgage. In affirming the Whitley Circuit Court, the Court of Appeals held that it does. We hold that it does not.

Heck's, Inc., and Heck's Properties, Inc., ("Heck's") were the lessees of a 1.25 acre tract of real estate and a 2.75 acre "common parking area," located in a shopping center

development in Williamsburg, Whitley County, Kentucky. The lessors/fee holders were John Bill Keck and Gloria Keck, his wife, and D.D. Roberts and Edith Roberts, his wife. Heck's undertook to mortgage its leasehold to Girard Bank, Harold E. Ikeler, and Roger W. Tompkins, Trustees ("the Girard Trustees"), to secure an indebtedness of $9,446,000.00, plus interest. Three documents were prepared, all bearing the date of July 1, 1978:(1) a mortgage of the leasehold interest from Heck's to the Girard Trustees; (2) an assignment of Heck's' leasehold interest to the Girard Trustees; and (3) a fee subordination agreement executed by the lessors/fee holders in favor of the Girard Trustees.

The body of the mortgage consists of fifty-two pages of provisions, the last of which, section 9.12, states: "The following are Schedules (sic) A, Schedule B and Schedule C referred to in this Indenture, which are hereby incorporated by reference herein." Schedule A contains a legal description of the various properties being mortgaged, including the Whitley County properties, and the source of Heck's' leasehold interests in those properties. Schedule B is a specimen of the promissory notes to be executed by Heck's and secured by the mortgage. Schedule C is a "Supplemental Indenture," which makes reference to the mortgage of July 1, 1978 and grants the Girard Trustees an additional mortgage and security interest in fixtures and materials on the property, as well as rents, income, profits, etc., generated by Heck's in the conduct of its department store business. Schedule C specifically provides that "This Supplemental Indenture is expressly made supplemental to and a part of the Original Indenture." Also attached to the mortgage is a document entitled "Schedule D," which is a schedule of Heck's' existing indebtedness as of May 31, 1978. The only signature blocks contained in these documents are located on the last page of Schedule C. The signature blocks are preceded by the following provision:

IN WITNESS WHEREOF, HECK'S PROPERTIES, INC., by its duly authorized officers has caused this Supplemental Indenture to be executed and delivered and its corporate seal hereunto affixed and attested, and GIRARD BANK, in token of its acceptance of the trusts created hereunder, by its duly authorized officers, has caused this Supplemental Indenture to be executed and delivered. . . .

On August 1 and 3, 1978, the notarized signatures of the appropriate representatives of Heck's and the Girard Trustees were affixed to the signature blocks at the end of Schedule C. No signatures were affixed at the end of the fifty-two page "Original Indenture."

The assignment of lease from Heck's to the Girard Trustees makes reference to the mortgage and "its supplements and amendments thereto." The assignment contains the notarized signatures of the appropriate representatives of Heck's and the Girard Trustees, each signature dated the same date as the day each signed Schedule C of the mortgage. The fee subordination agreement was signed by the Kecks and the Robertses on July 1, 1978. By that agreement, they subordinated their fee interests in the property to the equity interest created by the mortgage in favor of the Girard Trustees. All three documents were filed and recorded in the office of the Whitley County Court Clerk on August 9, 1978. In fact, the mortgage and the subordination agreement were recorded back-to-back in mortgage book 170. The Girard Trustees subsequently assigned their rights under these documents to Appellants, State Street Bank and Trust Company of Boston, Massachusetts, and James A. Quale, successor trustee ("State Street Bank").

On June 5, 1985, the Kecks and the Robertses mortgaged two tracts of land adjacent to the Heck's tracts to Appellee First National Bank and Trust Company of Corbin, Kentucky ("First National Bank"), to secure an indebtedness of $300,000.00. In its description of the mortgaged property, the mortgage describes what is later revealed to be a 10.98 acre tract (apparently the entire shopping center), subject to certain exceptions, including the following:

There is also excepted that certain portion of land heretofore leased to Heck's, Inc., by deed dated November 11, 1977, recorded in Lease Book 36, Page 215, Whitley County Court Clerk's Office, and that por-

tion encumbered to Girard Bank, et al., by mortgage dated July 1, 1978, recorded in Mortgage Book 107, page 1, Whitley County Court Clerk's Office. However, *NOT* excepted from this mortgage to the First National Bank and Trust Company of Corbin is the following portion of the lease and mortgage described above in this paragraph.

. . .

On December 31, 1991, the Kecks and the Robertses again mortgaged the same 10.98 acres to First National Bank to secure an indebtedness of $537,000.00. In this mortgage, the description of the 10.98 acres did not separately identify or exclude the smaller tracts previously leased to Heck's and mortgaged to the Girard Trustees.

Heck's subsequently defaulted on the Girard notes and, as assignee of both the notes and the July 1, 1978 mortgage, State Street Bank filed this action for a judicial sale of the mortgaged property and application of the sale proceeds to payment of the notes. Both First National Bank and the fee holders, the Kecks and Robertses, asserted that the July 1, 1978 mortgage was invalid, because the signatures of the parties to be charged, KRS 371.010, were not subscribed at the end of the mortgage as required by KRS 446.060(1). The Whitley Circuit Court and the Court of Appeals agreed. However, both correctly found that the attempted July 1, 1978 mortgage, accompanied by the transfer of the stated consideration to Heck's, created an equitable mortgage against the property in favor of the Girard Trustees and, ultimately, their assignee, State Street Bank. *See* 59 C.J.S. *Mortgages* § 16 (1949); *cf. Owensboro Banking Co. v. Lewis,* 269 Ky. 277, 106 S.W.2d 1000, 1004 (1937); *McFerran v. Louisville Title Co.'s Receiver,* 254 Ky. 362, 71 S.W.2d 655, 657–58 (1934); *Nichols v. Marquess,* 141 Ky. 642, 133 S.W. 562 (1911). The Whitley Circuit Court found that First National's 1991 mortgage had priority over State Street's equitable mortgage, because "there is no testimony in the record" that First National had actual notice of State Street's mortgage when it acquired the 1991 mortgage. KRS 382.270. The Court of Appeals held that although (1) First National

did have actual notice of the July 1, 1978 mortgage, as reflected by the exception recited in its 1985 mortgage, (2) the recording of an unrecordable mortgage does not give notice to subsequent creditors, and (3) an equitable mortgage does not exist until "created" by a court of equity, *i.e.,* the Whitley Circuit Court's judgment of March 30, 1995, and does not relate back against third parties to the date of its attempted creation, *i.e.,* July 1, 1978. Thus, although obtained with actual notice of State Street's equitable mortgage, First National's mortgage was given priority, because it was acquired and recorded before State Street's equitable mortgage was "created."

On discretionary review, State Street has abandoned its argument that the signatures at the end of Schedule C satisfy the requirement of KRS 446.060(1), and relies exclusively on its claim that its equitable mortgage is entitled to priority over First National's 1991 mortgage. Thus, we need not address whether the incorporation language contained in both the "Original Indenture" and Schedule C would satisfy KRS 446.060(1), *but see Bartelt Aviation, Inc. v. Dry Lake Coal Co., Inc.,* Ky.App., 682 S.W.2d 796 (1985) and *R.C. Durr Co., Inc. v. Bennett Industries, Inc.,* Ky.App., 590 S.W.2d 338 (1979) (if a writing clearly indicates that other terms are incorporated by reference, the signer agrees to be bound by everything incorporated); or whether the fact that Schedule D follows the signatures on Schedule C invalidates the entire mortgage agreement or invalidates only Schedule D, *but see Consolidated Aluminum Corp. v. Krieger,* Ky.App., 710 S.W.2d 869 (1986) (when a signature appears other than at the end of a writing, only the additional writing appearing after the signature is invalidated).

State Street first argues that the acknowledgement of the existence of the 1978 mortgage in First National's 1985 mortgage resulted in an "estoppel by deed," precluding First National from denying the validity of the 1978 mortgage in this litigation. However, this theory is defeated by the fact that State Street was not a party to the 1985 mortgage. *Hunts Branch Coal Co., Inc. v. Canada,* Ky., 599 S.W.2d 154 (1980). Nor

did the acknowledgement in the 1985 mortgage of the existence of the 1978 mortgage constitute an admission, since there was no proof that any employee or agent of First National prepared or signed the 1985 mortgage. The issue then becomes whether First National had notice of State Street's equitable mortgage when it acquired and recorded its 1991 mortgage against the same property and, if so, what effect such notice had on the relative priorities of the parties' interests.

KRS 382.270 provides in pertinent part as follows:

No deed or deed of trust or mortgage conveying a legal or equitable title to real property shall be valid against a purchaser for a valuable consideration, *without notice* thereof, or against creditors, until such deed or mortgage is acknowledged or proved according to law and lodged for record. (Emphasis added.)

█ The Court of Appeals held that the "without notice" clause refers to constructive notice, not actual notice, and that State Street's mortgage was not entitled to priority because the recordation of an unrecordable instrument does not constitute constructive notice. *Smith v. Jackson*, 232 Ky. 76, 22 S.W.2d 420 (1929); *Billington v. Dunn*, 217 Ky. 164, 289 S.W. 213, 214 (1926). But constructive notice is established by mere proof that a valid interest in real property is properly recorded in the office of a county court clerk. *Wides v. Wides' Ex'r*, 299 Ky. 103, 184 S.W.2d 579, 584 (1944). Thus, absent the "without notice" clause, KRS 382.270 does nothing more than reiterate the principle that a properly recorded and legally valid instrument constitutes constructive notice to subsequent purchasers or creditors. (Although the statute appears to impose the "without notice" requirement only on purchasers and not creditors, we have long held that the requirement applies equally to creditors as to purchasers. *Sears v. Cain*, 242 Ky. 702, 47 S.W.2d 513 (1932).) If the "without notice" clause meant "without constructive notice," it would be mere surplusage. Thus, we have construed that clause to mean without actual knowledge of the existence of a mortgage, either unrecorded or improperly recorded, or knowledge of such facts as

would lead a reasonably prudent person under like circumstances to inquire into the matter and discover the existence of that mortgage. *Cox v. Guaranty Bank & Trust Co.*, 199 Ky. 115, 250 S.W. 804 (1923). As so interpreted, the statute embodies a "race/notice" priority, *i.e.*, it is not the first to record, but the first to record without actual notice, who achieves priority. *Flowers v. Moorman & Hill*, Ky., 86 S.W. 545 (1905); *Minix v. Maggard*, Ky.App., 652 S.W.2d 93 (1983). Thus, although the recording of the 1978 mortgage did not give *constructive* notice of its existence to a subsequent purchaser or creditor, it retained priority over one whose interest was acquired with *actual* or *inquiry* notice of its existence. *See* 59 C.J.S. *Mortgages* § 261 (1949).

█ It is immaterial how the party charged with notice acquired his knowledge or from whom the information was obtained. 59 C.J.S. *Mortgages* § 251 (1949). In this case, there was *prima facie* proof that First National had both actual and inquiry notice of State Street's equitable mortgage. The reference in First National's 1985 mortgage to the existence of the 1978 mortgage was *prima facie* evidence that First National had actual notice of State Street's interest when it acquired its 1991 mortgage on the same property. Furthermore, First National had at least constructive notice of the subordination agreement by which its mortgagors subordinated their fee interest in the property to the equitable interest of State Street's assignors; and that was *prima facie* evidence of sufficient knowledge to put First National on inquiry notice of State Street's equitable interest. *Cox v. Guaranty Bank & Trust Co., supra; cf. Whittaker v. Farmers' Nat. Bank of Somerset*, 237 Ky. 596, 36 S.W.2d 18, 19 (1931). Contrary to the holding of the Whitley Circuit Court, proof of notice need not be by direct testimony, but may be established by all degrees and grades of evidence, including circumstantial evidence. 66 C.J.S. *Notice* § 21c(2) (1949).

█ Once a party establishes a *prima facie* case, he is entitled to prevail on that issue unless the opposing party produces evidence sufficient to inject some doubt that there is but one conclusion which reasonable men

could reach. *D.H. Overmyer Co. v. Hirsch Bros. & Co.,* Ky., 459 S.W.2d 598, 600 (1970). In the absence of any countervailing evidence to prove that First National did not have notice of State Street's mortgage, the finding of the Whitley Circuit Court in that respect was clearly erroneous. CR 52.01; *Plageman v. Board of Commissioners of City of Covington,* Ky.App., 569 S.W.2d 191 (1978). The circuit court's order of February 2, 1995 refers to the issue of the validity and enforceability of the July 1, 1978 mortgage as a "threshold issue." Thus, it is unclear whether the March 5, 1995 judgment was intended as a judgment on the merits of a completed record, or as a partial summary judgment under CR 56.04, made final by the recital specified in CR 54.02(1). Regardless, based on the state of the record when the judgment was entered, there was no genuine issue of material fact on the issue of notice, thus, the result would have been the same. CR 56.03; *Hubble v. Johnson,* Ky., 841 S.W.2d 169, 171 (1992).

In concluding that an equitable mortgage does not exist until it is "created" by a court of equity, the Court of Appeals relied solely on *Borg–Warner Acceptance Corp. v. First National Bank of Prestonsburg,* Ky.App., 577 S.W.2d 29 (1979). In fact, *Borg–Warner* seems to have gone both ways on this issue. The equitable mortgage in that case was unrecordable because the property was owned by a corporation and the mortgage was signed only by the shareholders as individuals. The first issue was whether the mortgage took priority over a subsequent federal tax lien. In holding that under federal tax law, 26 U.S.C. § 6323, actual notice by the federal government is immaterial, the Court of Appeals added in dictum that "under Kentucky law alone, actual knowledge on the part of the federal government would be fatal to its priority." *Id.* at 32. The second issue was whether the equitable mortgage took priority over a lis pendens notice filed by Borg–Warner Acceptance Corporation with actual notice of the defective mortgage. On this issue, the Court of Appeals held that an equitable mortgage does not exist until created by the trial court and does not relate back to the date of the attempted legal mortgage so as to take priority over a subsequent lienor with actual notice. *Id.* at 33.

No authority for this proposition was cited in *Borg–Warner* and none is found. In fact, we recently held in *Tile House, Inc. v. Cumberland Fed. Savings Bank,* Ky., 942 S.W.2d 904 (1997) that an equitable lien takes priority over a subsequent valid and recorded mortgage acquired with actual notice. *Id.* at 906. This is in accord with the general rule that an equitable lien attaches upon the advancement of the money and continues to exist for the duration of the debt. *Schram v. Burt,* 111 F.2d 557, 561 (6th Cir.1940); 59 C.J.S. *Mortgages* § 16 (1949). The court of equity does not create the lien, but only recognizes and enforces it. *See generally* 30A C.J.S. *Equity* §§ 57, 58 (1949); 53 C.J.S. *Liens* § 31 (1949). There is no "relation back" issue. If the lien is found to exist, it existed *ab initio* and is "effective as against the mortgagor himself and as against anyone dealing with the property with actual knowledge of it...." 59 C.J.S. *Mortgages* § 261 (1949). To the extent that *Borg–Warner Acceptance Corporation v. First National Bank of Prestonsburg* holds otherwise, it is overruled.

On the basis of the evidence introduced in this case, State Street Bank's equitable mortgage is entitled to priority over First National Bank's 1991 mortgage; and the judgment of the Whitley Circuit Court and the order of the Court of Appeals holding otherwise are both reversed. This case is remanded to the Whitley Circuit Court for any further proceedings necessary to enforce the respective liens of the parties in accordance with this opinion.

STEPHENS, C.J., GRAVES, JOHNSTONE and STUMBO, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion, with LAMBERT, J., joining that dissent.

WINTERSHEIMER, Justice, dissenting.

This extended case was completely unnecessary. If only the mortgage had been signed at the end in conformity with the Statute of Frauds, this aspect of the lawsuit would never have been filed, an appeal never

taken, discretionary review would not have been granted, and this Court would not have considered the matter and rendered an opinion. A great deal of legal and judicial time could have been saved if the law and well-established Kentucky practice had been followed originally.

I respectfully dissent from the majority opinion because the mortgage in question had not been signed at the end prior to being filed for recording. The Court of Appeals was correct when it determined that First National did not have actual notice of the mortgage in controversy.

The mortgage would be enforceable as an equitable mortgage but only between the parties to the document and, thus, would have no effect on First National. The Court of Appeals correctly determined that in order to be enforceable, the first mortgage would have to be signed by the party to be charged with it pursuant to the Statute of Frauds, KRS 371.010. Any document which requires a signature is to be signed at the end of the writing. KRS 446.060. KRS 382.270 requires that a mortgage be acknowledged or proved and recorded in the proper office, which is generally considered to be the office of the county clerk. The signature at the end of Schedule C in this case was not sufficient to validate the mortgage.

It has been held that a mortgage which has not been acknowledged nor proved is not recordable and is not valid nor does it give notice to subsequent creditors. *Starr Piano Co. v. Petrey*, 168 Ky. 530, 182 S.W. 624 (1916). The trial court found that there was no valid evidence that First National had actual notice of the existence of a valid first mortgage.

In addition, it has been previously held that an equitable mortgage cannot relate back to the date of an attempted legal mortgage and can be enforced only as of the date of a court adjudication that it was an equitable mortgage. *Borg–Warner Acceptance Corp. v. First National Bank of Prestonsburg*, Ky.App., 577 S.W.2d 29 (1979). Certainly, in certain circumstances, an equitable lien can take priority over a subsequent valid and recorded mortgage acquired by actual notice. *Tile House, Inc. v. Cumberland Fed-*eral Savings Bank, Ky., 942 S.W.2d 904 (1997). *Tile House, Inc.* does not apply because the instrument in question was never signed in conformity with the requirements of the Statute of Frauds.

The trial judge was not clearly erroneous when he found that the mortgage document did not contain a signature at the end, was not acknowledged or proved and contained no source of title. Consequently, he determined that there was no actual notice based on the record before him.

It would appear that this case could have easily been resolved through the exercise of professional diligence in obtaining a signature at the end of the document, properly acknowledged, with a source of title.

I would affirm the Court of Appeals and the circuit court.

LAMBERT, J., joins in this dissent.